# NOVEMBER, 1942

LONE STAR GAS COMPANY V. H. S. KELLY ET UX.

No. 7921. Decided October 14, 1942.
Rehearing overruled November 11, 1942.
(165 S. W., 2d Series, 446.)

....

*Walker, Smith & Shannon* and *Ogden K. Shannon,* of Fort Worth, *Thompson, Knight, Harris; Wright & Weisberg, Adair Remert* and *H. F. Thompson,* all of Dallas, for appellant, Lone Star Gas Company.

The order of the railroad commission is unreasonable, arbitrary, and impossible of performance because it requires those engaged in the business of distributing gas to introduce such a quantity of malodorant therein as to produce a distinctive odor when infinitestimal amounts of gas are present in unlimited quantities of air, and violates the due process provisions of Article 1, section 19 of our State Constitution and the 14th amendment to that of the United States. Weaver v. Robinson, 114 Texas 272, 268 S. W. 133; Gilmore v. Waples, 108 Texas 167, 188 S. W. 1037; Railroad Commission v. Texas & N. O. Ry. Co., 42 S. W. (2d) 1091; Brown v. Humble Oil & Refining Co., 126 Texas 296, 87 S. W. (2d) 1069, 39 Tex. Jur., 275.

*W. P. McLean, Jr.,* and *Glover Johnson,* both of Fort Worth, for appellees.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit for damages for personal injuries. The Kellys were users of natural gas furnished by the Lone Star Gas Company. When Mrs. Kelly attempted to light a stove at their home an explosion occurred resulting in serious injuries to

her. The sole ground of negligence alleged was that the gas company had failed so to odorize its gas that a person with an ordinary sense of smell could detect the presence of gas at the time and place of the explosion.

The duty which it is asserted the gas company violated was sought to be imposed by Article 6053a, secs. 2 and 3, R. S., 1925, as enacted in 1937, and an order of the Railroad Commission of Texas promulgated on July 27, 1937, pursuant to said articles.

Relevant parts of section 2, of Art. 6053a, supra, are as follows: "* * It (the Interstate Oil Compact Commission) is empowered and it shall be its duty to investigate the use of malodorants by * * corporations engaged in the business of * * selling or distributing natural * * gases, * * for private * * uses, * * and the Commission is empowered to require such * * corporations to odorize such gas by the use of a malodorant agent of such character as to indicate by a distinctive odor the presence of gas * * the method of its use * * to be under the direction of and as approved by the Railroad Commission of Texas." Section 3 makes failure to comply with orders of the Commission made under authority of section 2 an offense punishable by a fine of one thousand dollars for each day of such failure.

The Railroad Commission order was as follows: "The malodorant agent to be introduced into natural gas shall be of such character as to indicate by distinctive odor the presence of gas when such gas is present in concentrations not greater than one per cent by volume. * * By this is meant that the gas shall be given an odor by adding an agent that will vaporize, dissolve in or be so mixed with gas * * as to produce an odor readily perceptible to a normal or average olfactory sense of a person coming from fresh, ungasified air when gas is present not in more than one part to ninety-nine parts of air in cases of natural gas * *."

With the term "odorize" defined in the language of this order, the jury found that the gas company had failed to odorize the gas which escaped from the Kellys' appliances at the time in question.

The gas company excepted to the special issue and to the definition because "the language prescribed by the Railroad

Commission rule is so vague, uncertain and indefinite as to be an unreasonable and invalid provision, and therefore void; and does not set up a sufficiently definite standard by which to enable the defendant to be advised of the requirements of the law and to comply therewith as to the extent of the odorization required."

Because the rule, in the respect complained of, has not been construed by our appellate courts, and because of the importance of the matters involved, the Court of Civil Appeals at Fort Worth has certified the following question:

"Is that part of the Railroad Commission's Rule No. 4 which reads 'the malodorant agent to be introduced into natural gas shall be of such character as to indicate by distinctive odor the presence of gas when such gas is present in concentrations not greater than one per cent by volume,' void, because it is too vague, uncertain, unreasonable and capricious, when considered in connection with the explanation made in the same rule, as to what is meant thereby?"

### OPINION.

No one charged with the responsibility of writing the answer to this question could fail to see its vital public importance. Natural gas has become so generally used and is so potentially dangerous to its users that the public interest demands that proper safeguards be furnished by those who distribute it. (See Lane v. Community Natural Gas Co., 133 Texas, 128, 123 S. W. (2d) 639.) It is commonly known to be highly volatile; hence there is always a possibility of its stealthy escape from the appliances by which it is furnished with a consequent danger to the consumer of asphyxiation or injury from explosion when a sufficient quantity of it unites with the free air on the premises of the user. To warn of the presence of such gas and thereby to avoid tragic consequences is clearly the commendable purpose of both the legislature and the commission in requiring its odorization. It follows that the order should be sustained if possible, and it may be assumed that the courts would approve it if they could do so with due deference to fundamental laws, which all courts are sworn to uphold.

In the tentative opinion accompanying their certificate the Court of Civil Appeals say that a majority of that court believe that the gas company's objections to the order are well taken. We think the majority view is correct.

When the State, whether by statute or by order of some governmental agency, promulgates a rule of conduct for the citizen, it must speak in specific and definite terms so that he may clearly understand what is required of him.

■ Unfortunately the order under consideration is definite and specific in only one particular, and therein lies its vice. It plainly rquires odorization when gas is present in the air in *any* proportion provided it does not amount to more than one part of gas to ninety-nine parts of air. In this respect there is no ambiguity. While it probably was not so intended by the Commission, the order clearly calls for odorization although gas may be present only in infinitesimal porportions, in quantity so minute as to be wholly inconsequential and utterly without dangerous potentialities to the user, but which can never be definitely determined by the one charged with the obligation to perform. The law does not demand the impossible or the vain. If it attempts to do so it is unreasonable and the attempt is void. Below what portion in the union of gas and air is the presence of the gas harmless? At what proportion in the union does the presence of gas become discoverable because of the malodorant? Conversely, below what proportion is its presence not so discoverable? Obviously these questions are open to debate, and that is sufficient to invalidate the order. As stated by the Supreme Court of the United States, "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 269 U. S., 385, 70 L. Ed., 322.

■ Again, the order does not accord due process because it essays to apply to situations wherein no public purpose could be served but an individual burden is imposed. This vice in the order is demonstrated by the fact that the upper limit of the portion of gas and air when odorization is required is absolutely fixed at one to ninety-nine. The order says that the malodorant must indicate the presence of gas "when such gas is present in concentrations *not greater than one per cent by volume*" and then, to define its meaning, says it shall produce an odor "readily perceptible to a normal or average olfactory sense of a person coming from fresh, ungasified air when gas is present *not more than one part to ninety-nine parts of air*." (Italics ours.) In the presence of this unequivocal language, twice used

in the order, we cannot say that it requires odorization when the proportion *is greater* than one per cent or that the Commission intended so to require. Lewis's Sutherland Statutory Construction, vol. 2, p. 699, sec. 366, citing Green v. Weller, 32 Miss., 650, and numerous other cases. Such construction clearly would be contrary to the commonly understood import of the simple language of the order, yet it is common knowledge that it is when gas is present in proportions in excess of one to ninety-nine that danger of fire, explosion and suffocation is greater to the consumer. Counsel for the Kellys have tendered for our consideration Bulletins Nos. 32 and 34 issued by the National Board of Fire Underwriters, which organization is recognized as an authority by Art. 6053a, sec. 2-a, Vernon's Tex. An. Civ. Stat. From Bulletin 32, issued February 1, 1937, we learn that the lower and upper explosive limits of methane gas are fixed at 5.6 and 13.5 per cent of gas in air by volume, respectively, and in explanation the bulletin says, "It has been found that flammable gases and vapors will burn or explode only when the proportion of gas or vapor to air is within certain limits, known as the flammable or explosive limits." Consequently the order defeats its own purpose, in declaring it the duty of the distributor of gas to odorize the same only when gas is present to the extent of one per cent by volume or less. The police power cannot be exercised to impose a burden upon the individual unless it results in benefit to the public. Lone Star Gas Co. v. City of Fort Worth et al, 93 Fed. (2d) 584, and sse 16 C. J. S., Const. Law, sec. 567, p. 1140.

In short, although the statute makes violation of the order a penal offense, the order prescribes no definite standard or rule of conduct. It is wholly lacking in that degree of certainty which our fundamental doctrine of "due process" makes essential to all laws or governmental orders issued pursuant thereto. It imposes a burden but bestows no benefit. These rules respecting due process of law extend to every case wherein governmental power is sought to be exercised, so they apply to a Railroad Commission order such as the one now before us. 12 Am. Jur., Const. Law, sec. 586, p. 283.

In these conclusions we are reminded that "A good purpose cannot justify a wrong method of its achievement. The inexorable command is that a statute, * * must accord due process of law. Nothing is paramount to that requirement. The security of property, life and liberty depend upon its ob-

servance. * * Hence, the duty to declare the statute void is plain, although the occasion of its performance is most regrettable." I. & G. N. Ry. v. Mallard (Com. App.), 277 S. W., 1051.

Some authorities in point, other than those already cited, are M. K. & T. Ry. Co. of Texas v. State, 100 Texas, 420, 100 S. W., 424; Christy-Dolph et al v. Gragg, Commissioner, et al, 59 Fed., 766; 39 Tex. Jur., p. 160, sec. 88; ibd, p. 162, sec. 89; 12 Am. Jur., Const. Law, sec. 585, p. 282; 16 C. J. S., Const. Law, sec. 580, p. 1173. In this connection we deem it proper to say that the question now before us was not raised in Houston Natural Gas Co. v. Kluck, 163 S. W. (2d) 618, recently decided by this Court; hence that case is not in point.

Under the statute it is the function and duty of the Railroad Commission to make proper orders for the protection of life and property in such situations as that presented in this case. But our duty is equally as plain and compelling when such orders are not in accord with fundamental law as announced in the Constitution. The Commission can still enter a valid order relating to the effective odorization of gas.

Our answer to the question certified is "yes."

Opinion adopted by the Supreme Court, Oct. 14, 1942.

Rehearing overruled November 11, 1942.