

# THE ATTORNEY GENERAL

## OF TEXAS

Grover Sellers

~~JOHN XXXX SHEPPERD~~

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Perry L. Jones
County Attorney
Travis County
Austin, Texas

Opinion No. O-6847

Re: Constitutionality of
Public Accounting Act of
1945 (Senate Bill No. 176,
Acts 49th Legislature, 1945,
Chapter 315, page 517).

Dear Sir:

In your letter of September 24, 1945, you have requested an opinion from this office relative to the above subject. Submitted therewith was a brief by Mr. James P. Hart of the firm of Hart and Brown of Austin, Texas, in which the constitutionality of the above-cited Act is attacked on several grounds. The pertinent paragraphs of your letter (which are conveniently numbered) are quoted:

"1. Is the Act unconstitutional because the title of the Act is in violation of the provisions of Article III, Sections 35 and 36, of the State Constitution? In connection with the foregoing question, I respectfully direct your attention to the following considerations.

"(a) The first clause of the title states that it is an Act <u>to amend</u> Chapter 122, Acts of 1915, 34th Legislature, known as Article 31 to 41, inclusive, Revised Civil Statutes of Texas, whereas, the second clause of the title states that it is an Act <u>repealing</u> said Chapter 122, Acts of the 34th Legislature. Are these two statements in the title inconsistent and contradictory to the extent that the title does not express the subject of the Act, as is required by Article III, Section 35, of the Constitution?

"(b) The title of the Act makes no reference to the fact that certain sections of the Act create and define new criminal offenses; there is merely a statement that the Act provides 'for penalties for violating the provisions of said Act.' Sections 8, 16, 18, and 20 contain certain prohibitions and Section 24 provides that 'any person who shall hold himself out to the public as a public accountant or shall engage in the

practice of public accountancy as same
is defined in Section 2 of this Act, without having
obtained a certificate or permit, or any person
who shall violate any of the provisions of this
Act, shall be deemed guilty of a misdemeanor and
upon conviction thereof shall be punished by a
fine not to exceed Five Hundred ($500.00) Dollars,
or by imprisonment in jail for not more than six
(6) months, or by both such fine and imprisonment.'
Does the failure of the title to state that
criminal offenses are created and defined
by the Act, as well as that a penalty is fixed
for 'violating the provisions of said Act',
invalidate the penal provisions of the Act?

"(c)   There is no reference in the title to
the fact that Section 26 of the Act repeals Ar-
ticles 1132 and 1133 of the Penal Code, unless
it can be said that these articles of the Penal
Code are included in the statement in the title
that the Act repeals 'said Chapter 122, Acts of the
34th Legislature.'   Articles 1132 and 1133 of
the Penal Code were originally enacted in 1915
as Sections 12 and 13 of Chapter 122 of the Acts
of the 34th Legislature, but the wording of
these sections was changed in certain respects
when they were included in the Penal Code in the
revision of 1925.   Is the title sufficient to
show that Articles 1132 and 1133 of the Penal
Code are repealed, especially in view of the
fact that in the first clause of the title to
this Act reference is made only to the articles
which are included in the Revised Civil Statutes.

"(d)   Treating the Act as an attempt to
amend Chapter 122, Acts of 1915, 35th Legisla-
ture, Articles 31 to 41, inclusive, Revised
Civil Statutes, the following changes are made
by the new Act which are not referred to in its
title:

"(1)   Articles 31 to 41, inclusive, Revised
Civil Statutes, set up a plan whereby certificates
could be issued upon examination to certified
public accountants and prohibited the use of the
title of 'certified public accountant' by any
person not possessing a legal certificate.   How-
ever, Article 41 (Section 14 of said Chap. 122)
specifically provided that nothing in the law
should be construed to prevent any person from

being employed as an accountant in this state in either public or private practice, so long as he did not hold himself out to be a certified public accountant. The new Act limits the practice of public accounting to persons who were able to meet certain qualifications 'at the date of the enactment of this Act' and certified public accountants. See particularly Sections 8 through 12, inclusive, of the Act. In other words, the effect of the new Act is to prohibit the practice of public accountancy except by certified public accountants and a limited class of public accountants who were practicing 'at the date of the enactment of this Act.' Is this broad change in the law sufficiently expressed in the caption?

"(2) The new Act creates new offenses not contained in the old law. Section 8 Prohibits the practice of public accountancy except by persons holding permits from the Board of Public Accountancy. Section 18 prohibits the use of the name 'public accountant' by any person who does not have a permit to practice public accountancy. Section 20 prohibits the use of any of a long list of abbreviations by any person. Section 24 fixes a criminal penalty for any person who 'shall violate any of the provisions of this Act.' Does the title sufficiently show that the old law is amended so as to create these new offenses?

"(3) The old law contained no provision for the promulgation of 'rules of professional conduct' by the Board after a referendum of the licensed accountants as is provided in Section 5 of the new Act. Section 22 (c) of the new Act makes a violation of any of these rules a ground for revoking a certificate or permit. Is this change in the law sufficiently expressed in the title?

"2. Is the Act unconstitutional because it is so vague and indefinite as not to give notice to persons affected of their rights and obligations under the law? In connection with this question, your attention is respectfully directed to the provisions of Section 11 (b), (1), (2), (3), that a person is entitled to a permit who 'shall have been employed as an accountant or

auditor in work of a non-routine accounting nature which continually required independent thought and judgment on important accounting matters.' Is this provision sufficiently definite so as to fix a standard whereby persons may know who is and who is not entitled to receive a permit?

"3. Is Section 5 of the Act unconstitutional as containing an unlawful delegation of legislative power in providing that the Board may promulgate rules of professional conduct, which must be voted on and approved by a majority of all holders of valid permits to practice public accountancy in the state, voting at such election?

"4. If the Act is unconstitutional in any of the respects referred to above, is the entire Act void or are only certain sections void? If the Act is only partially invalid, please advise me which sections in your opinion are valid.

"5. If the Act is wholly or partially invalid, which parts, if any, of the old law are still in effect?

"6. If the Act is valid, what is the meaning of the phrase 'at the date of the enactment of this Act', as used in Section 11 of the Act? In this connection, the Board of Public Accountancy apparently has construed the phrase to mean the date upon which the Act was filed with the Secretary of State without the Governor's signature, on June 6, 1945. Is this the correct construction of this phrase, or should the date referred to be construed to be the effective date of the Act, which is 90 days after June 5, 1945, the date of adjournment?

"7. With reference to Section 3 of the Act, which provides that nothing in the Act shall be construed as applying to any county auditor, or other officers of the state, county, municipality, quasi-municipality, or other political subdivision thereof, or of their assistants, deputies, or employees, I respectfully submit the following questions:

"(a) Is this section valid in exempting the named persons from the operation of the Act?

"(b)  If the exemption is valid, is it to
be construed to mean that the persons named
therein may do any of the acts which are pro-
hibited as to other persons by the Act, including
the general practice of public accountancy without
a permit?

"(c)  Are the persons named in this section
eligible to register as public accountants under
the provisions of the Act?

"(d)  Does this section apply to part-time
employees as well as to full-time employees?"

Relating to the title of the Act, the first question
here presented has several subdivisions, the specific answers
to which may be prefaced with some general principles concern-
ing the purpose, requirements and construction of titles to
bills passed by the Legislature.  Article III, Section 35 of
the Constitution of Texas (which in substance is the same
as similar provisions in other states) provides as follows:

"No bill, (except general appropriation
bills, which may embrace the various subjects
and accounts, for and on account of which moneys
are appropriated) shall contain more than one
subject, which shall be expressed in its title.
But if any subject shall be embraced in an act,
which shall not be expressed in the title, such
act shall be void only as to so much thereof, as
shall not be so expressed."

The dominant purpose of this constitutional pro-
vision is to give notice to the legislators and the public
of the subject matter or the nature of the contents of the
bill and to avoid deception or surprise in legislation by
prohibiting the inclusion of unrelated matter.  The title
of a bill should be sufficient to put anyone interested on
inquiry.  Only the general or ultimate object of the Act is
required to be stated in the title and it is sufficient if
such is fairly stated in a manner that would direct a person
of "ordinary, reasonably inquiring mind to the body of
the Act."  (39 Tex. Jur., Sec. 36, pp. 75-78, and cases cited;
Horack's Sutherland Statutory Construction, Sec. 1701,
pp. 283-286, Sec. 1702, pp. 287-291; 50 Am. Jur., Sec. 160,
p. 135.)

This constitutional provision is mandatory.  Ex-
cept as otherwise provided (in Article III, Section 43, Con-
stitution of Texas) it must be complied with in all acts of

the Legislature. (39 Tex. Jur., Sec. 37, pp. 79-80, and cases cited; Horack's Sutherland Statutory Construction, Sec. 1703, p. 291.)

Substantial compliance, however, is sufficient and the provision will be liberally construed. Any doubt will be resolved in favor of the validity of the title and the statute. Technical construction will not be indulged. It will not be given "a construction unnecessary to accomplish the beneficial purpose for which the provision was adopted and one which would tend merely to embarrass, retard or defeat legislation. (39 Tex. Jur., 38, pp.40-83, and cases cited; Horack's Sutherland Statutory Construction, Sections 1704, 1705, 1706, pp. 292-295.)

The title of the Public Accountancy Act of 1945 reads as follows:

"An Act to amend Chapter 122, Acts of 1915, 34th Legislature, known as Articles 31 to 41, inclusive, Revised Civil Statutes of Texas; repealing said Chapter 122, Acts of the 34th Legislature; providing for the creation of a State Board of Public Accountancy in Texas; providing for the appointment of members of said Board, and prescribing their qualifications, powers and duties in regulating the practice of public accountancy in Texas; providing for the issuance of annual permits to practice public accountancy; providing for the examination of and issuance of the Certificate of Certified Public Accountant to qualified applicants; providing venue and procedure for cancellation of any certificate or permit; repealing all laws in conflict therewith; providing for penalties for violating the provision of said Act; and declaring any emergency."

With the foregoing as a guide and considering the above title in the light of its purpose, the several parts of your first question are answered numerically as follows:

Question 1 (a): The first two clauses of the title to this Act (the first of which states that it is an Act "to amend Chapter 122, Acts of 1915, 34th Legislature, known as Articles 31 to 41, inclusive, Revised Civil Statues of Texas," and the second of which states that it is an Act "repealing Chapter 122, Acts of 1915, 34th Legislature") are not considered inconsistent and contradictory to the extent that the title does not express the subject of the Act in compliance with Article III, Section 35, of the Constitution of Texas. Considered together, these two clauses should put anyone interested on notice that the old law was being recast and that there was a new comprehensive law being enacted. To find

them confusing or contrary to the purpose of the constitutional provision would be to embarrass legislation with a highly technical construction.

Question 1 (b): The penal provisions of the Act (Section 24) are not invalidated by reason of the title's not specifying that the penalties for violation is a criminal offense.  The next to the last clause in the title reads: "Providing for penalties for violating the provision of said Act."  It is not required that the title of an Act be an index or set forth in detail the contents.  It is sufficient if the reader be put on inquiry.  The cases cited in the brief submitted (Ex parte Heartsill, 38 S.W. (2d) 803; Rotner v. State, 55 S.W. (2d) 98)are concerned with amendatory acts which are limited in scope and only purport to change the previous law in some particular.  The Act here is comprehensive of the entire subject with which it treats and is not strictly amendatory.  That an offense may be created in an Act when the title states only that it provides "for penalties" has been decided.  (Singleton v. State, 111 S.W. 737; Watts v. State, 135 S.W. 585; Polk v. State, 148 S.W. 311; Focke v. State, 144 S.W. 267; 39 Tex. Jur., Sec. 45, pp. 96, 98.)

Question 1 (c):  The title of the Act in question is sufficient to cover the repeal by the Act of Articles 1132 and 1133, of the Penal Code.  As stated, it is not required that the title be an index to the contents of the Act.  These articles were a part of Chapter 122, Acts of 1915, 34th Legislature, which the title states is being repealed. The first clause designates Articles 31 to 41, inclusive, of the Revised Civil Statutes of Texas, while the second clause designates all of Chapter 122.  Even if, because of this difference or of the codification of said chapter, there were a doubt, certainly the clause is sufficient to direct an interested person to the contents of the Act wherein these two articles are specifically repealed.

Question 1 (d):  This question is divided into three parts numbered (1), (2) and (3), all of which concern the sufficiency of the title to an amendatory Act.  In the brief submitted, it is stated that "the insufficiency of the title is most apparent when considered in the light of the rules applicable to captions of amendatory Acts. . . it is well settled that if an amendatory Act undertakes to state in what respects a prior Act is amended, then it must give a fair statement of the changes effected by the new Act. . ." The rule stated is correct as to Acts which are strictly amendatory.  But the Public Accountancy Act of 1945 is new and comprehensive legislation on the entire subject with which it treats.  It is intelligible without reference to

any other statute. The Act is independent and complete within itself and the usual constitutional restrictions on strictly amendatory Acts are not applicable. It should therefore be governed by the general rules applicable to the necessity and sufficiency of titles, and it is not necessary that the title list in detail all of the differences between the repealed Act and the new legislation. (39 Tex. Jur., Sec. 63, pp. 125-127; 59 C.J., Sec. 436, p. 858; 50 Am. Jur., Sec. 214, p. 192; Horack's Sutherland Statutory Construction, Sec. 1921, pp. 382-388).

The title then is, on the whole, sufficient to meet the constitutional requirements. All of the clauses in the title are germane to the general object of the Act which is to recast the legislation regulating the practice of public accounting and there are no provisions of the Act which are unrelated to such an object, or invalidated by the wording of particular clauses in the title.

There is next to consider the second question presented which relates to the certainty and definiteness of the Act and particularly to Section 11, subsection (b), paragraphs (1), (2) and (3), and to Section 12, subsection (d), paragraphs (1), (2) and (3). These paragraphs of the Act are quoted:

"(1) Who is a graduate of a junior college, senior college or university and has completed thirty or more semester hours or the equivalent thereof in the study of accounting, business law, economics and finance, of which at least twenty semester hours or the equivalent thereof shall be in the study of accounting, and has been in the employ of a person engaged in the practice of public accountancy, or shall have been employed as an accountant or auditor in work of a non-routine accounting nature which continually requires independent thought and judgment on important accounting matters for two years preceding the date of application; or

"(2) Who is a graduate of a junior college, senior college or university but has not completed the hours of study in subjects specified in subdivision (1) of this section, and has been in the employ of a person engaged in the practice of public accountancy, or shall have been employed as an accountant or auditor in work of a non-routine accounting nature which continually requires independent thought and judgment

on important accounting matters for three years preceding the date of application; or

"(3)  Who is a graduate of a high school or has an equivalent education and has been in the employ of a person engaged in the practice of public accountancy, or shall have been employed as an accountant or auditor in work of a non-routine accounting nature which continually requires independent thought and judgment on important accounting matters, for at leat four years preceding the date of application;

" . . .

"(1)  Who is a graduate of a junior college, senior college or university recognized by the Board, and has completed thirty or more semester hours or the equivalent thereof in the study of accounting, business law, economics and finance, of which at least twenty semester hours or the equivalent thereof shall be in the study of accounting, and has been engaged in practice as a public accountant, or been in the employ of a person engaged in the practice of public accountancy, or shall have been employed as an accountant or auditor in work of a non-routine accounting nature which continually requires independent thought and judgment on important accounting matters for one year preceding the date of application; or

"(2)  Who is a graduate of a junior college, senior college or university recognized by the Board but has not completed the hours of study in subjects specified in subdivision (1) of this section, and has been engaged in practice as a public accountant, or been in the employ of a person engaged in the practice of public accounting, or shall have been employed as an accountant or auditor in work of a non-routine accounting nature which continually requires independent thought and judgment on important accounting matters for three years preceding the date of application; or

"(3)  Who is a graduate of a high school with a four year course or has an equivalent education and has been in practice as a public accountant, or been in the employ of a person engaged in the practice of public accountancy, or

shall have been employed as an accountant or
auditor in work of a non-routine accounting
nature which continually requires independent
thought and judgment on important accounting
matters, for at least four years preceding the
date of application; and

".  .  ."

It is asked whether the phrase in each of the above
paragraphs, reading, "or shall have been employed as an ac-
countant or auditor in work of a non-routine accounting nature
which continually requires independent thought and judgment
on important accounting matters." is sufficiently definite
to fix a standard whereby a person may know who is
entitled to receive a permit. In the brief submitted,
it is contended that the Act is unconstitutional be-
cause it is vague and indefinite in the use of the above-
quoted phrase.

That laws must be certain and definite to be valid
is fundamental. Certainty and definiteness, however, are
relative terms and must necessarily vary with the subject
matter. The difficulty of at once avoiding arbitrariness or
discrimination and employing exact language is readily ap-
parent and it appears generally sufficient if the terms used
are as certain or definite as the subject matter permits.
In Baltimore and Ohio Railway Company v. I.C.C. (221 U.S.
612) the Supreme Court of the United States, in considering
the certainty of a phrase, "except in case of emergency,"
said:

".  .  . But this argument, in substance,
denies to the Legislature the power to use a
generic description, and if pressed to its
logical conclusion, would practically nullify
the legislative authority by making it essen-
tial that legislation should define, without
the use of generic terms, all the specific in-
stances to be brought within it. In a legal
sense there is no uncertainty. Congress, by
an appropriate description of an exceptional
class, has established a standard with respect
to which cases that arise must be adjudged."

This case is quoted from and followed by the
Supreme Court of Texas in State v. International & G. N. Ry.
Co., (179 S.W. 867) wherein the court discussed at length
the "certainty and definiteness" required of a statute.
(See also Bradford v. State, 180 S.W. 702.) The following
from the court's opinion is quoted:

" . . . Construing it strictly, if its provisions are vague and uncertain of meaning to a degree that those engaged in the line of industry affected by the act as operatives and managers of such industry could not comprehend its meaning, then the act should be held inoperative and void for uncertainty of meaning. The provisions of the act, in order for it to be enforceable, should be plain enough in meaning for those operating the industry affected by it to know and realize whether by engaging in an act of repair they would breach its terms. If the act meets and fulfills the requirements of this rule, it would be sufficiently definite in meaning to be operative. If it is not sufficiently plain in meaning for those engaged in the line of industry affected to so understand its terms and provisions, then the act would and should be held void for uncertainty, as it would be inexcusable for a government to fine or punish its citizens for an infraction of a law which in its terms could not be understood by them. But it is equally true that, if the act of the Legislature is as definite in meaning as the nature of the subject would allow, no more than this should be expected to meet the rule of certainty required; to hold otherwise would be to nullify the power of the Legislature to legislate at all on a proper subject for its consideration. . . . As used in this connection, we think the meaning of that portion of the act of the Legislature which creates the offense is not rendered as uncertain as it would be if the term 'light repairs' constituted an ingredient of the offense itself.

" . . . If a definition of the term 'light repairs' had been attempted, it would have been impossible of construction, unless a catalogue of all repairs that might be considered 'light' was embraced in the act. This would have been indeed a difficult, if not an impossible, task, when all the separate parts of the complicated machinery in use in the equipment and operation of railroads which might need repairs were considered, and the character of the repairs to each of said pieces of machinery, whether 'light' or otherwise, were taken into account. . . Such a rigid requirement would be too great a restriction upon the legislative function, and if followed, would shorten the arm of the Legislature to an extent that would amount to a serious hindrance to the exercise of their constitutional functions. We know of no rule of construction that would authorize us to

<u>nullify an act of the Legislature because</u>
<u>of uncertainty in meaning, when from the</u>
<u>nature of the subject legislated upon no more</u>
<u>definite meaning could reasonably be expressed,</u>
<u>the effect of which would be to prohibit</u>
<u>legislation upon the subject.</u> ... We think the
statute in question is sufficiently definite for those
affected by it to understand its meaning so as to
know under what circumstances they would be
transgressing its provisions. This is all that
is or should be required.

"... In the water-closet statute (Acts 29th
Leg. c. 133), which was penal in its nature, one
of the requirements of the railroad companies was
to keep water-closets or privies in a 'reasonably
clean and sanitary condition.' Another of its
provisions was that said water-closets should be
maintained 'either within its passenger depots,
or in connection therewith, or within a reasonable
and convenient distance therefrom.' Another
was 'to keep said water-closets and depot grounds
adjacent thereto well lighted at such hours in
the nighttime as its passengers and patrons at
such stations may have occasion to be at the same.'

"... In passing upon that case this court,
speaking through Mr. Justice Phillips, clearly
expressed the true rule, and the reason therfor,
in the following language:

"'... Its terms are suitable to the subject
matter of the act; and, having regard for the
difference in conditions at the stations upon
railway lines where it is made operative, the use
of more specific language would very probably
have provided only an arbitrary and impracticable
rule.' State v. T. & P. Ry. Co., 154 S.W. 1159.

"..." (Underscoring ours)

The cases cited in the brief submitted (page 14)
are not strictly applicable here because in (1) Lone
Star Gas Company v. Kelly (165 S.W. (2d) 446), the primary
consideration was given to an order of the Railroad Commission
(2) American Federation of Labor v. Mann (188 S.W. (2d)
276), the uncertainty was determined on contradictory phrases,
and (3) Sheppard v. Giebel (110 S.W. (2d) 166), there was
uncertainty as to which of two persons were subject to the
penalty or liable for the tax.

It is noteworthy that the phrase in question is not a portion of the Act which penalizes the violation of its provisions. The phrase is inserted for the guidance of the Board created by the Act which in this respect is a fact-finding body and it appears throughout the Act as an alternative to the requirement of employment by a person engaged in the practice of public accountancy.

On the whole, the question of whether the phrase is vague and indefinite to the extent that it invalidates the Act, or those sections of the Act in which it is used, turns on whether it is clear enough for the Board and Accountants generally to comprehend its meaning. If it is plain enough for those engaged in the profession which it affects to understand it, it is sufficient. This must be determined with reference to the subject matter and if the phrase is as "definite in meaning as the nature of the subject would allow, no more than this should be expected to meet the rule of certainty required."

In a broad, generic sense the subject of accounting embraces the keeping and explanation of business accounts and anyone engaged in any manner in work involving either of these might be designated as an accountant. Within the profession of accounting, however, and in a more specific sense the mere keeping of accounts is distinguished from their explanation. Many varying classifications of persons engaged in this type of work have been made in different localities and businesses and included are such relative descriptions as bookkeeper, accounting clerk, auditing clerk, junior accountant, semi-senior accountant, senior accountant and certified public accountant. Obviously, the work is of such a nature that in whatever classification a particular employment is placed it may on occasion invade or assume the character of duties in another classification.

It appears, therefore, that the qualifications to be required of a person before he may hold himself out as a public accountant cannot be exactly circumscribed without providing an arbitrary and impracticable rule. It would require a catalogue of impossible magnitude. While ultimate definition of the words employed in the above phrase would be difficult, it is believed that, when read as a whole, it should present no difficulty to the understanding of accountants generally, and that from it they could determine whether a particular employment was within its scope. Such, in the last analysis is the test and it therefore appears that the phrase is as certain and definite as the subject permits.

The third question asks whether Section 5 of the Act is unconstitutional as containing an unlawful delegation of legislative power. This Section 5 provides in part as follows:

"... The Board may promulgate, and may amend from time to time, rules of professional conduct appropriate to establish and maintain a high standard of integrity in the profession of public accountancy, after notice to all holders of valid permits to practice public accountancy in this state. Such notice shall set forth the proposed rules of professional conduct or amendments and the time when same shall be voted on by public accountants holding valid permits under this Act. No such rule or amendment shall be operative until approved by a majority of those voting at such election. The voting shall be by mail and under such reasonable rules and regulations as the Board may prescribe. The Board shall declare the results of such election and proclaim the effective date of such rules of professional conduct, or amendments, and adopt reasonable means of notifying all public accountants of the results of such election. ..."

Granting that the Legislature has broad power to delegate to administrative bodies the promulgation of rules and regulations for carrying out general policies fixed by the Legislature, the brief attacks this delegation as being too broad and giving to private persons the right to make rules having the effect of law in that a violation of such rules is a ground for revocation of permits granted under the Act.

Section 22 of the Act provides that the Board shall have power to institute proceedings against any person charged and found guilty of:

"(a)  The practice of any fraud or deceit in obtaining a certificate or a permit;

"(b)  Any gross negligence or misconduct in the practice of public accountancy;

"(c)  Violation of any of the provisions of this Act or any of the rules or regulations promulgated by the Board."

There is no invariable test by which the delegation of authority by the Legislature and particularly the power to make rules and regulations for effectuating a statute, may be determined. There is an ill-defined line between powers which are strictly legislative and those which are not. (9 Tex. Jur., Sec. 68, p. 494.) In recent years the power of delegation has broadened with an increase in complex and technical matters regarding which legislation has been necessary. It appears well-settled in Texas that the Legislature may grant to boards and commissioners power to make rules for effectuating general statutes, power to find facts on the ascertainment of which a completed law shall become applicable and powers which the Legislature cannot itself practically and efficiently exercise. (Trimier v. Carlton, 296 S.W. 1070; Rhodes v. Tatum, 206 S.W. 115; O'Brien v. Ammerman, 233 S.W. 1019; Burgess v. American Rio Grande Land & Irrigation Co., 295 S.W. 649; Williams v. State, 176 S.W. (2d) 177; Corzelius v. Harrell, 186 S.W. (2d) 961; Treewitt v. City of Dallas, 242 S.W. 1073.) It has been said that as the State has the power to regulate a profession affecting the public and may delegate to a board or agency the authority to pass on qualifications, it may also delegate the power to revoke licenses that have been issued (Francisco v. Board of Dental Examiners, 149 S.W. (2d) 619; See also Berry v. State, 135 S.W. 631.) The opinion of the Court of Criminal Appeals in Williams v. State, supra, by Judge Davidson, is particularly applicable here, wherein it was said:

"The question of this delegation of authority has been much before the courts, and especially is that true in recent years by the enlarged powers conferred upon administrative boards and tribunals. The generally accepted rule governing such matters now appears to be that a legislative body may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the power to fill up the details, by prescribing rules and regulations to promote the purpose and spirit of the legislation and to carry it into effect. In such cases the action of the Legislature in giving such rules and regulations the force of laws does not violate the constitutional inhibition against delegating the legislative function. The rule finds support in Field (Marshall) v. Clark, 143 U.S. 649, 12 S. Ct. 495, 505, 36 L.Ed. 294, wherein the Supreme Court said: 'The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things

upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation.' See also: United States v. Grimaud, 220 U.S. 506, 31 S. Ct. 480, 55 L. Ed. 563; United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S. Ct. 42, 77 L. Ed. 175; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S. Ct. 241, 79 L. Ed. 446; Ex parte Leslie, 87 Tex. Cr. R. 476, 223 S.W. 227; Carter v. State, 135 Tex. Cr. R. 457, 116 S.W. 2d 371; Smith v. State, 74 Tex. Cr. R. 232, 168 S.W. 522; Tuttle v. Wood, Tex. Civ. App., 35 S.W. 2d 1061; Britton v. Smith, Tex. Civ. App., 82 S.W.2d 1065; Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W. 2d 79, 130 A.L.R. 1053; and authorities from other jurisdictions, collated under 79 L.Ed. 490."

The delegation here in question (Section 5, above-quoted) is not mandatory but permissive. It has given to the Board the discretion of promulgating rules "appropriate to establish and maintain a high standard of integrity in the practice of Public accountancy." There is a standard set and the rules could be no more than a defining in detail of what acts or procedures within the profession of accounting would or would not come within its scope. The authority is not so much given to private persons as it is to the profession of accounting; it is a prescription for the machinery or procedure by which the profession may be, in a measure and insofar as ethics are concerned, self-governing.

There is a strong similarity between this delegation and that to the Supreme Court of Texas in the State Bar Act (see Article 320a, Section 4, V.A.C.S.; and see also Hexter Title and Abstract Co. v. Grievance Committee, 179 S.W.(2d) 946). Any rules promulgated and approved hereunder would not appear to approach in force rules effected under the Bar Act.

Although the Act empowers the Board to institute proceedings for a violation of any rules established, it does not necessarily authorize a revocation of a permit for an infraction thereof. It leaves them subject to judicial review (see Section 23) and directs that the court find any "Act or acts are in violation of the provisions of this Act."

Further, integrity as used in this delegation is synonomous with "moral soundness, honesty, freedom from corrupting influence or practice." Elsewhere in the Act (Section 11 and Section 12 (c)), it is provided that persons entitled to a permit must be of "good moral character." Section 22 (b) provides that proceedings may be instituted to revoke a permit for "misconduct in the practice of public accountancy." To the enforcement of the Act, therefore, it does not appear important whether any rules established are made the basis for revocation of permits. Considering the nature of the practice of accounting, it appears that any infraction of rules in consonance with the "high standard of integrity" specified would as well manifest the absence of "good moral character." Although what will constitute "misconduct," as used in the Act, is left a judicial question, it would certainly appear that such would include any violation of rules calculated to establish and maintain integrity within the profession.

The above considered, this office cannot concur that such a cautious and restricted delegation, subject as it is to the approval of the persons affected and to judicial review, is unconstitutional.

The fourth and fifth questions are predicated on the Act's being wholly or partially invalid and inasmuch as it has not been found unconstitutional in any respect, no answer to these questions is required.

The sixth question asks the meaning of the phrase, "at the date of the enactment of this Act," as used in Section 11. As stated in the brief, there does not appear to be any Texas case precisely in point. The case there cited (at page 17, in Re Hendricks, 57 Pac. 965, by the Supreme Court of Kansas, July 8, 1899) holds that the phrase means the time of the law's taking effect. However, a more recent case of another state (State v. Gibbons, 203 Pac. 390, by the Supreme Court of Washington, January 4, 1922), holds that the "date of enactment" means the time that the law comes into existence, it being complete as such time, and not the date on which the Act takes effect. Definition of the term "enactment" should, of course, be consistent with the Constitution of Texas, and in Article III, Section 39, there is a clear distinction between the date on which a law "takes effect" and the date on which it is "enacted." The term "enactment" relating to statutes is substantially synonomous with "passage" which is used in connection with legislation in several senses and the meaning of which must be determined from the intention appearing from the statute as a whole. (See Scales v. Marshall, 70 S.W. 945.)

Considering the Act as a whole, it appears that during the legislative process the only "date of enactment" understood by the Legislature would necessarily have been that on which the legislative process was completed, as the bill contained a provision that it would be effective "from and after its passage." That the bill did not receive the required vote has no bearing on the intent as to the meaning of the phrase in question. It seems clear that it was intended to treat with public accountancy as it existed at the time the legislation was being considered and to fix the date on which the status of the individuals affected could be determined. This question is therefore answered that by "the date of the enactment of this Act" is meant the date when the law came into existence, or June 6, 1945.

The question seven presented relates to Section 3 of the Act and is divided into four subdivisions. This section provides:

"Nothing in this Act shall be construed as applying to any County Auditor, or other officer of the state, county, municipality, quasi-municipality, or other political subdivision thereof, or of their assistants, deputies or employees."

Considering all of the circumstances and the Act as a whole, it appears that the intent of this provison was to obviate any possible misunderstanding of the preceding Section 2 as including in its scope the officers named as such. It was to make clear that the Act did not affect the qualifications of such officers for their respective offices. To view this provision in any other light would be to impute to the Legislature an intent to make an unreasonable and arbitrary discrimination in that, on the one hand, these officers could practice public accountancy without permit or, on the other hand, they could not register as having been in the employ of "any governmental agency" and this phrase (in Section 11 (b) would be restricted to the Federal Government alone. That construction of statutes should be reasonable and in favor of validity rather than strict resulting in invalidity, is fundamental. The several parts of question seven may therefore be answered as follows:

(a)  This Section 3 is not unconstitutional.

(b)  It is not to be construed that officers or persons named in Section 3 may do anything prohibited by the Act, but as individuals, they must comply with its provisions.

(c) The persons named in this section are eligible to register as public accountants as being in the employ of "any governmental agency," if they meet the other qualifications.

(d) This section 3 applies to part-time employees, when they are strictly assistants, deputies, or employees of the officers named therein, but the exemption is not applicable to persons doing auditing work for the State, county, municipality, or quasi-municipality as independent contractors.

-----------------------------

After receipt of the inquiry answered above, this office has received another request for an opinion relating to the Public Accountancy Act of 1945, from Honorable Homer L. Moss, County Attorney, Wheeler County, Wheeler, Texas. The pertinent paragraphs of this request are quoted:

"The local Wheeler County Bar, including myself, have been interested in whether or not a recent act of the Legislature, titled, S. B. 176, Vernon's Ann. Civ. St., art. 41a, regulating the practice of public accountancy in Texas applies to licensed attorneys who merely prepare income tax returns.

"The facts are as follows: The local county group and no doubt, many other attorneys do not hold themselves out in any manner as public accountants and do not undertake for a fee or otherwise to audit or prepare accounts for individuals as bookkeepers or any manner other than the examining and auditing such books as an incident to the proper preparation of the required Federal Income tax reports and estimates.

" . . . "

The primary purpose of this Act is to regulate the "Practice of Public Accountancy." This quoted term is used throughout the Act, and in Section 2 thereof is defined as follows:

"Definitions. (a) 'Practice of Public Accountancy.' A person engages in the 'practice of public accountancy' within the meaning of this Act who, holding himself out to the public as a public accountant, in consideration of compensation received or to be received by him, offers

> to perform or does perform, for other persons, services which involve the auditing or examination of financial transactions, books, accounts, or records, or the preparation of, or the reporting over his signature on, financial, accounting and related statments.

" . . . "

An application of the above definition to the Act as a whole does not reveal any prohibition against licensed attorneys performing services of the kind mentioned.  It is apparent from the above that one's "holding himself out to the public as a public accountant" is necessary to the applicability of the Act.  That one profession may at times perform services which are also within the province of another profession is evidenced by the Act itself in that accountants to be certified under the Act must pass an examination on commercial law.  Taxation is certainly as much (if not more) within the province of the legal as of the accounting profession, and both professions practice (after admission) before the Tax Court of the United States. The deciding factor, therefore, is not so much the service performed, as the capacity in which one is employed to perform it, and the question here may be answered that this Act does not prohibit duly qualified attorneys-at-law from performing any service for which he is employed in a legal capacity.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

(signed)

Approved Oct. 29, 1945                 By        Jackson Littleton
signed:                                                    Assistant
Carlos C. Ashley
First Assistant
Attorney General

Approved Opinion Committee
By G.W.B.
    Chairman

JL:db:jcp:ddt:cs