ACCEPTED
03-13-00370-CV
8363329
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/23/2015 2:46:18 PM
JEFFREY D. KYLE
CLERK

NO. 03-13-00370-CV
IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/23/2015 2:46:18 PM
JEFFREY D. KYLE
Clerk

The State Board for Educator Certification,
      APPELLANT

v.

Erasmo Montalvo,
      APPELLEE

## Motion for Rehearing

Erasmo Montalvo, appellee, files his Motion for a Rehearing of the Court's Memorandum Opinion issued in this cause on November 24, 2015 and shows the following:

The decision of the Honorable Court of Appeals in this case, holding that the State Board for Educator Certification may revoke the teacher certification of a teacher who has not done anything unethical, not violated any law or regulation, and who has engaged in no conduct that harmed any person or that was intended to harm any person, establishes a dangerous precedent that makes a governmental agency unaccountable for its decisions, and is in error in the following respects:

1

1.    The Unconstitutional As Applied Issue

On pages 8-9 of its Opinion, the court states that Mr. Montalvo has waived his argument that the term "unworthy to instruct" is unconstitutionally vague because he did not challenge the rules containing the term at the State Office of Administrative Hearings hearing nor raise it in his complaint in District Court.

First, Mr. Montalvo's argument that the term "unworthy to instruct" is unconstitutionally vague was made in response to Issue III in the agency's brief: i.e., "The Board's standard of 'unworthy to instruct' is not unconstitutionally vague."

In other words, it was the agency, as the party challenging the trial court's judgment, that raised the issue. Mr. Montalvo disagreed with this position, which was an integral part of his case. He did not waive the issue by responding to it.

Further, Mr. Montalvo had raised this issue clearly and consistently throughout the proceedings:

a. Mr. Montalvo raised it in his *Motion for Rehearing* before the agency (See Clerk's Record in 03-12-00723, p. 79, an interlocutory

proceeding in this same matter). At pages 12-13, (Exception No. 2),

Mr. Montalvo wrote the following:

Mr. Montalvo excepts to the revocation of his certificate as a violation of his right to due process of law under the Federal and State Constitutions.

> It is a general principle of law that a statute or regulation must be definite to be valid. Due process of law in legislation requires definiteness or certainty. If a regulation is incomplete, vague, indefinite and uncertain and it forbids the doing of an act which is so vague, that men of common intelligence must necessarily guess at its meaning and that such men differ as to application, it violates the first essential of due process of law. *Lone Star Gas Co. v. Kelly,* 140 Tex. 15, 165 S.W.2d 446 (Tex. Comm'n App. 1942); *Connally v. General Construction Co.,* 269 U.S. 385, 26 S.Ct. 126, 70 L.Ed. 322 (1926); 16A C.J.S. Constitutional Laws 569(5), p. 584; 16 Am.Jur.2d 551—552.

*Sanders v. State Dept. of Public Welfare*, 472 S.W.2d 179 (Civ.App. 1971—Corpus Christi, writ dismissed). See also*, Vista Healthcare, Inc. v. Texas Mut. Ins. Co.,* 324 S.W.3d 264, 273 (Tex. App.—Austin 2010, pet. denied); and *TXU Generation Co., L.P. v. Public Utility Com'n of Texas,* 165 S.W.3d 821, 839 (Tex.App.–Austin 2005, no pet.), which states:

> When determining whether a rule adopted by an agency is unconstitutionally vague, Court of Appeals scrutinizes the rule by asking whether the ordinary participant in the regulated market could understand and comply with it.

In the present case, the rule states that the nature, timing, and extent of the communications between a teacher and a student will be taken into consideration. Certainly, if the nature of the communication is a solicitation of a romantic or sexual relationship, any teacher would be hard pressed to say that he or she did not understand that talk of this nature was covered by this rule.

But that is not what we have here. We have a specific rejection that there was any improper communication or other conduct by Mr. Montalvo that any ordinary person or educator would understand to be prohibited by this rule, and to such an extent that engaging in that conduct could lead to the revocation of his or her certificate even in the absence of any harmful conduct. Indeed, even if the conduct were entirely well-intentioned and beneficial to the student, as in this case.

b. Mr. Montalvo raised it in his *Original and Amended Petitions for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction* in District Court (see Clerk's Record in No. 03-12-00723-CV):

19.     The Decision of the State Board for Educator Certification to revoke Plaintiff's teaching certificate was arbitrary and capricious and a denial of due course of law under Article 1, Section 19 of the Texas Constitution, because the conduct purportedly prohibited is so vague, indefinite and uncertain that men of common intelligence must necessarily guess at its meaning. *Lone Star Gas Co. v. Kelly*, 140 Tex. 15, 165 S.W.2d 446 (Tex. Comm'n App. 1942); *Connally v. General Construction Co.*, 269 U.S. 385, 26 S.Ct. 126, 70 L.Ed. 322 (1926); 16A C.J.S. Constitutional Laws 569(5), p. 584; 16 Am.Jur.2d 551—552.

4

c. Mr. Montalvo raised it in his *trial court brief* (which was not requested as part of the clerk's record, but can be requested if the Court determines that Mr. Montalvo raising the issue in the trial court is, indeed, an issue):

<u>Point of Error No. 3 (Restated)</u>

The State Board for Educator Certification violated Mr. Montalvo's right to due process by basing its decision to revoke his certification on a standard so vague that no reasonable person would understand what conduct was prohibited.

<u>Discussion of Point of Error No. 3</u>

The Administrative Law Judge, in Conclusion of Law No. 7 stated: "The foregoing Findings of Fact do not support a conclusion that Mr. Montalvo is a person unworthy to instruct or supervise the youth of this state."

The Board changed this Conclusion of Law to read:

Based on Findings of Fact 11, 14, 18, 20, 22, 23 and 26, Respondent exceeded the bounds of the proper educator-student relationship and is a person unworthy to instruct or supervise the youth of this state.

At the Temporary Injunction hearing in this case, the Agency's attorney stated that "unworthy to instruct" is a concept similar to what Justice Stewart said about pornography: "You know it when you see it."

5

In certain instances, that might be true. For example, if a teacher has a romantic relationship with a student or beats a student to a pulp for chewing gum in class, the phrase "unworthy to instruct," vague and general as it is, would be sufficient to place a teacher on notice that if he engages in this conduct, his certification will be in jeopardy. It is reasonable to attribute to any teacher notice that having a romantic relationship with a student is out of bounds, as is giving a student a physical beating in the absence of extenuating circumstances.

It is also reasonable to attribute to the teacher notice of the Code of Ethics, which sets forth numerous types of conduct that are frowned upon by the state.

But what about conduct that falls outside the Code of Ethics that the Board wishes to use as justification to revoke or take other punitive action against a teacher? Those cases, like the present one, will always involve a question as to whether the phrase "unworthy to instruct" provides sufficient notice that particular conduct is prohibited and can lead to the loss of one's certification and, in essence, his ability to make a living in the profession he has trained for.

The notice question is a due process question. "The standard rule is that a statute is unconstitutionally vague if the required course of conduct is stated in terms so vague that people of common intelligence must guess at what is required." *Texas Dept. of Pub. Safety v. Chavez*, 981 S.W.2d 449, 452 (Tex. App. 1998).

The importance of this concept is explained by the U.S. Supreme Court as follows:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of

ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.' Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked.'

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222 (1972).

The present case is the epitome of this rationale. The Agency has used vague language (i.e., "unworthy to instruct") to authorize an ad hoc resolution to reach the result it wants to reach on a subjective basis, as opposed to the result mandated by the evidence and fact findings at a full and fair hearing, with the attendant dangers of arbitrary and discriminatory application.

Certainly, as noted above, there are circumstances in which the vague phrase "unworthy to instruct" is adequate. The regulation is not, therefore, unconstitutional on its face. It is, however, unconstitutional as a denial of due process as to Mr. Montalvo.

Where no First Amendment rights are involved, the court need only scrutinize the regulation to determine whether it is impermissibly vague as applied to Mr. Montalvo's conduct. *Clark v. State*, 665 S.W.2d 476, 483 (Tex. Crim. App. 1984), citing *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S.

489, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982), and *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). In this case, assuming, for the sake of discussion, that no First Amendment rights are involved, the phrase "unworthy to instruct" fails to place him on notice that the conduct set forth in Finding of Fact Nos. 11, 14, 18, 20, 22, 23 and 26 comes within the meaning of this term—especially when that conduct has been considered by the fact finder and rejected as being within the scope of any prohibited activity when placed in context of the entire situation.

Nor is the vagueness of the phrase when applied to Mr. Montalvo's conduct lessened by the inclusion of the Board of the words "exceeded the bounds of the proper educator-student relationship," when this standard is no more specific, when placed in the context of the Findings of Fact concerning Mr. Montalvo's conduct, than is "unworthy to instruct."

The Agency relies on the following language, which was presented to the Administrative Law Judge, to bail it out:

As a Texas Court of Civil Appeals ruled in the seminal case of *Marrs v. Matthews*, 270 S.W. 2d 586 (1925), "unworthy to instruct" means the lack of 'worth'; the absence of those moral and mental qualities which are required to enable one to render the service essential to the accomplishment of the object which the law has in view."

34 Tex Reg 5422.

Plaintiff will forego mentioning the fact that this definition is every bit as vague as the term it attempts to define.

The Agency's explanation continues:

Therefore, the moral fitness of a person to instruct the youth of this state must be determined from an examination of all relevant conduct, is not limited to conduct that occurs while performing the duties of a professional educator, and is not limited to conduct that

8

constitutes a criminal violation or results in a criminal conviction.

*Id.*

This language actually undercuts the Agency's argument, inasmuch as the Board, in concluding that Mr. Montalvo was "unworthy to instruct," failed and refused to examine all relevant conduct, and to put the Findings it cherry-picked in context, allowing it to reach its arbitrary and capricious conclusion.

Finally, the Agency points to the following language in its submission to the Texas Register:

> Educators have positions of authority, have extensive access to students when no other adults (or even other students, in some cases) are present, and have access to confidential information that could provide a unique opportunity to exploit student vulnerabilities. Therefore, educators must clearly understand the boundaries of the educator-student relationship that they are trusted not to cross. The SBEC considers any violation of such trust, such as soliciting or engaging in a romantic or sexual relationship with any student or minor, to be conduct that may result in permanent revocation of an educator's certificate.

*Id.*

> At last! A statement with some degree of specificity. Although "the boundaries of the educator-student relationship" is still questionable, at least it contains examples of those boundaries that the ordinary person (even a teacher) should be able to understand: No romantic or sexual relationships with a student. But wait! That is precisely what is specifically prohibited by Standard 3.6 of the Code of Ethics. This conduct is what the Administrative Law Judge rejected in her Findings of Fact and which the Board effectively rejected by adopting those Findings, as follows:

9

Finding of Fact No. 21: "There is insufficient evidence to support a finding that the rub downs were sexual and involved inappropriate touching."

Finding of Fact No. 24: "There is insufficient evidence to support a finding that Mr. Montalvo sexually abused or assaulted V.S. when she went to use the Jacuzzi."

Finding of Fact No. 25: "There is insufficient evidence to support a finding that Mr. Montalvo sexually abused or assaulted V.S. in the field house."

Finding of Fact No. 27: "The phone calls were about V.S.'s track performance and emotional issues. The calls did not relate to or constitute a sexual or romantic solicitation or relationship between Mr. Montalvo and V.S."

Finding of Fact No. 28: "There is insufficient evidence to support a finding of any inappropriate touching, or sexual or romantic solicitation or relationship, between Mr. Montalvo and V.S."

Finding of Fact No. 29: "There is insufficient evidence to support a finding that Mr. Montalvo knowingly treated V.S. in a manner that adversely affected her learning, physical health, mental health, or safety."

Finding of Fact No. 30: "There is insufficient evidence to support a finding that Mr. Montalvo intentionally, knowingly, or recklessly engaged in physical mistreatment, neglect, or abuse of V.S."

What is it, then, that Mr. Montalvo did that falls within the catch-all "unworthy to instruct" phrase? What is it, in spite of the fact that nothing that he did was found to have been of ill-intent or had a negative effect on the student in question, that makes him a person who is not worthy to instruct the youth of the state of Texas?

The answer is: "Nothing."

The only thing Mr. Montalvo is guilty of is offending the sensitivities of the Board, which apparently thinks a certain unspecified number of phone calls made at certain unspecified times of day, for certain unspecified lengths is offensive to them; and that rub downs of female students by a coach make them squeamish. As stated previously, if they want to outlaw conduct that they find personally offensive, they have the power to do it.

What the Board does not have the power to do, as a matter of due process, is adopt the phrase "unworthy to instruct" in a regulation and decide later what it means, making it an entirely subjective concept, "with the attendant dangers of arbitrary and discriminatory application"--especially if what it later decides is not reasonably self-apparent to a teacher of common intelligence. See *Grayned*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222 (1972).

d. As noted previously, the agency raised the constitutionality of the "unworthy to instruct" language as its own issue and spent a number of pages in its brief discussing that issue—because it was a hotly contested issue in the trial court. The trial court did not cite this issue as a basis for reversing the agency's decision, but, then, it did not have to do so: the trial court held that the decision was arbitrary and capricious and not supported by substantial evidence. It then followed

the general rule that constitutional issues will not be reached when they can be resolved on non-constitutional grounds. *In the Interest of B.L.D.,* 113 S.W.3d 340, 349 (Tex. 2003).

2.    <u>SBEC's decision was arbitrary and capricious.</u>

The Court correctly notes, on pages 4-5 of its Opinion, that a state agency's decision is *required* to be reversed or remanded for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are … (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The Court also holds, on page 11, that "it was reasonable—not arbitrary and capricious or an unwarranted exercise of discretion—for the Board to conclude that Montalvo crossed the bounds of a proper educator-student relationship even in the absence of any violations of the Code of Ethics or other rules or policies."

It has long been held that a decision is "arbitrary" if it is:

[f]ixed or done capriciously or at pleasure; *without adequate determining principle*; not founded in the nature of things; nonrational; *not done or acting according to reason or judgment*; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic.

*King v. Falls Cty.*, 42 S.W.2d 481, 482 (Tex. Civ. App.--Waco 1931, n.w.h.); *Goodrum v. State*, 158 S.W.2d 81 (Tex. Civ. App.--Galveston 1942, writ ref'd, w.o.m.)

The problem with the agency's decision in the present case is that it employed no determining principle. It employed nothing more than a gut feeling. A gut feeling that should have been rejected because the agency's own findings demonstrated that its gut was wrong.

Instead of exercising reason or judgment, the agency determined that if something just doesn't feel right in a vacuum, there is no amount of context that can overcome those feelings, and the teacher who makes them feel that way is "unworthy to instruct" the children of Texas—not because of anything the teacher has done, but because of the agency's reaction to it.

In essence, what the agency has done is conclude that because there might be instances in which a teacher who engages in a large number of telephone conversations with a student is a bad guy, all teachers who do so are bad guys. No need to take into account its very own fact finding (No. 27) that "the calls were about [the student's] track performance and emotional issues" as opposed to any attempt to lead to an improper relationship of some sort.

When you rely on gut feelings, there is no need to take into account that even though there was testimony that more than 400 phone calls between a teacher and student was a "little excessive" and "not appropriate" (as stated by the athletic director), the overwhelming testimony was that the more important consideration was what the calls actually concerned (testimony of the principal and superintendent at pages 643-44, 647-49, and 873 of the SOAH transcript.) But what do principals and superintendents know?

The same is true of the other evidence cited by the Court, all of which failed to lead the fact finder (the person who actually heard the evidence and observed the witnesses) to make any finding that would support a conclusion that Mr. Montalvo is "unworthy to instruct." Indeed, all of the ultimate Findings of Fact rejected the idea that Mr. Montalvo had engaged in any conduct that would make him unworthy to instruct.

Yet the agency claims that it must protect the state's children from Mr. Montalvo, while citing no evidence, no studies, no anything in support the conclusion that any particular conduct of Mr. Montalvo is inherently a danger to the state's students.

On page 10 of its Opinion, the Court essentially adopts this line of reasoning, stating that the definition of "unworthy to instruct" includes no

requirement that the educator violate any rule or policy" and "does not require an 'improper' event or actual harm, and it is the duty of the Board to protect the safety and welfare of Texas schoolchildren, which includes assessment of *potential* harm." (Emphasis added.)

Fair enough. But what is the potential harm the Board has assessed in this case? It offers none in its Final Order. It offers none in its briefing. The Court does not specify any in its Opinion.

In the absence of any finding or evidence of potential harm or that Mr. Montalvo was attempting or intending to engage in harmful conduct, the agency's claim that it is protecting the safety and welfare of the state's school children rings hollow. Arbitrarily and capriciously hollow. It is more likely to create a hole to be filled by someone who actually is a threat to children by removing someone who has been thoroughly vetted and found to be nothing but a human being who, like most beings, is not perfect.

Being imperfect aside, the agency has no valid basis in the law, the evidence, or any finding by the fact-finder for concluding that Mr. Montalvo did anything that was a threat to the safety and welfare of any student in the State of Texas or was intending or likely to do anything that would make him a threat to any child.

CONCLUSION

This case demonstrates why we have hearings before upending someone's life by depriving him of his livelihood and career: in order to ensure that decisions that devastate good people and their families are only made after all relevant evidence is received and all relevant factors are taken into account and given their proper context.

If the current decision stands, this agency no longer needs *any* rational basis for revoking a teacher's certification. It is, effectively, unaccountable. All it has to say is, "We disapprove of what you did, and it doesn't matter whether you had any basis for knowing in advance that we would disapprove of it."

This is what is commonly referred to as a government of men (and women), not of law.

Which is not a good thing.

**PRAYER FOR RELIEF**

For the above reasons, Erasmo Montalvo, appellee, respectfully requests that the Court withdraw its decision in this case issued on November 24, 2015 and affirm the judgment of the trial court; or remand the

case to the trial court for consideration of the "unconstitutional as applied" issue.

Respectfully submitted,

BRIM, ARNETT & ROBINETT, P.C.
Attorneys at Law
2525 Wallingwood Drive
Building 14
Austin, Texas 78746
(512) 328-0048
(512) 328-4814 (facsimile)

BY:__*/s/ Mark W. Robinett*
Mark W. Robinett
State Bar No. 17083600

## CERTIFICATE OF COMPLIANCE

The word count is 3927. The word processing software used to prepare this filing and calculate the word count is Microsoft Word 2010.

*/s/ Mark W. Robinett*
MARK W. ROBINETT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served via the court's e-filing system on Ellen Sameth, Assistant Attorney General on this 23rd day of December 2015.

*/s/ Mark W. Robinett*
Mark W. Robinett