## SWETT v. CUTTS.

A land owner who, in the *reasonable use* of his own land, diverts or obstructs the flow of water not gathered into a stream, but either circulating through the pores of the earth or spreading over the surface in the season of melting snows or heavy rains, is not liable for an injury to his neighbor caused by such diversion or obstruction.

Where the plaintiff and defendant were adjoining owners of land by the side of a highway, in the ditch of which water was accustomed to accumulate, and for many years it found its way off through a depression in defendant's land,—*held*, that plaintiff would acquire no right by prescription to have the water run off over the defendant's land.

CASE, by John L. Swett against Edwin Cutts.   The first count of the declaration alleges that plaintiff is the owner of a tract of land west of and contiguous to a highway, and bounded on the north by defendant's land; that " there is, and from time immemorial has been, along the westerly margin of said highway, contiguous to the land of the said defendant and the said described tract of land of the said plaintiff, a certain ditch or water-course, in which, in seasons of rain and melting snow, the water has been wont to gather and accumulate, and which, by means of a depression in the said land of the said defendant, has, from time immemorial, until the wrongful acts of the said defendant hereinafter mentioned, and, but for said wrongful acts, would still, as the same ought to, flow and be carried away and discharged over and across the said land of the said defendant.   Yet the said defendant, well knowing the premises, but contriving and intending to wrong and injure the said plaintiff, and to cause the water accumulating as aforesaid to flow over and be carried upon and over the aforesaid tract of land of the said plaintiff, did, on the 20th day of November, A. D. 1869, build, erect, and place a high embankment or

barrier across said depression where said water had been wont to flow away and be discharged as aforesaid over and across the said land of the said defendant, by reason whereof, afterwards, to wit, on the said 20th day of November, A. D. 1869, and from that time hitherto, the said water, accumulating as aforesaid, has been turned, and caused to flow and be carried with great force and violence over and upon the said tract of land of the said plaintiff, by means whereof the soil and earth of said tract of land has become greatly washed and carried away, and said tract of land has thereby been rendered of no value."

The second count did not differ materially from the first, except in alleging, in addition to the building of the embankment, the cutting of a trench by defendant to let the water pass over plaintiff's land. The third count related solely to the cutting of the trench. *Plea*, the general issue.

Plaintiff introduced evidence tending to show that for about forty years, in the season of melting snow, water has usually accumulated in a ditch or depression on the lower side of the highway, contiguous to the land of plaintiff and defendant, and that the greater portion of it has escaped over a depression on the line of defendant's land, on to and over defendant's land, and that there has generally been a gully on defendant's land, at some distance from the highway, where the land fell off more rapidly; that in 1869 defendant built an embankment in front of his highway fence, which has caused a portion of the water which would otherwise have gone over defendant's land to go over plaintiff's land, causing damage to plaintiff's land. A witness for plaintiff, who had known the premises longer than any of plaintiff's other witnesses (viz., about forty years), testified, in substance, that the water on the lower side of the road, as a general thing, ran across defendant's land; that the water used to run across plaintiff's land some, but that he never knew it to run across to do damage; that when the water ran across plaintiff's land, there would be a gully perhaps about as large as a plough furrow, but that he never knew plaintiff's land to gully when it was grassed over; that the water would not run across plaintiff's land at all unless there was quite an amount of water in the ditch; that there is now more of a ditch on the lower side of the road than there was in old times; that defendant's land was always ploughed, and that there was almost every year a gully on that part of defendant's land, which was back from the road where there was more fall.

Defendant contended and offered evidence tending to show that there was and had been, during a considerable portion of the time for the last thirty years, a garden on defendant's land, so situated between the road and the gully that it would have been flowed if any considerable quantity of water had passed from the depression at the road down over defendant's land. The court did not understand the plaintiff to admit this.

Both sides relied, in part, upon a view had by the jury.

Defendant requested the following instructions: "That the owner of adjoining land has a right to fill it up, though by doing so he inter-

rupts the flow of surface water from the highway." " That the owner of land may lawfully occupy and improve it in such manner as either to prevent surface water which accumulates elsewhere from coming upon it, or altering the course of surface water which has accumulated thereon, or came upon it from elsewhere; although the water is thereby made to flow upon the adjoining land of another to his loss." Subject to exception, the above instructions were refused, *pro forma;* and the jury were, in substance, instructed, *pro forma*, that plaintiff could recover if he proved all the following propositions, viz. :

1. That, so long as memory goes back, there has been a ditch on the lower side of the road.   2. That in such ditch, so long as memory goes back, the water has been wont to gather and accumulate in any one particular season of each year,—for example, in the season of melting snow.   3. That there was a depression in defendant's land, by, through, or over which part of the water in the ditch at these seasons of accumulation has been wont to flow off and be carried over defendant's land.   4. That defendant built the embankment.  5. That the embankment caused some appreciable portion of the water, which would not otherwise have passed off over plaintiff's land but over defendant's land, to pass off over plaintiff's land.   To these instructions defendant excepted.   Plaintiff requested an instruction " that twenty years is sufficient to make out a case of prescription;" also, an instruction " that twenty years is competent evidence of a prescription." Defendant objecting, the instructions asked were not given.   The jury were further instructed, that if they found all the above propositions made out, but no actual damage, they should return a verdict for one cent nominal damages.

The jury returned a verdict in favor of plaintiff for eight dollars and thirty-three cents, and found specially that defendant was not liable on account of the trench alleged.   Defendant moved to set aside the verdict; and also moved in arrest of judgment, on the ground that the declaration did not set forth a legal cause of action.

The declaration is made part of this statement.

*Barton,* for defendant.

There is no legal cause of action set forth in the plaintiff's declaration.

It states, among other things, that in a certain ditch or water-course, in seasons of rain and melting snow, the water has been wont to gather and accumulate.   This statement makes the " ditch" a simple place of deposit at a certain season of the year of surface water.   It negatives the existence of a water-course: only for a few days in the year is there any water in this ditch.

The temporary accumulation of water in a ditch, in times of great and unusual freshet or melting snow, for any number of years, forms or constitutes no case of right by prescription.

A water-course is not to be determined in this way.   It must be something more than surface drainage into a certain place for a few days in a year.

The embankment made by the defendant formed no legal ground of complaint. The owner of land has a right to fill it up, though in so doing he interrupts the flow of surface water from the highway. 51 Maine 521 ; Town Officer, page 245, note.

And on principle it can make no difference whether the water so interrupted flows directly from the highway or into a ditch in its passage to and upon the owner's land.

The owner of land may lawfully occupy and improve the same in such a manner as to prevent surface water which accumulates elsewhere from coming upon it, although the water is thereby made to flow upon adjoining lands of another to his loss. *Gannon* v. *Hargadon*, 10 Allen 106, and authorities there cited.

The right to regulate and control the flow of surface water cannot be asserted and enforced by one coterminous proprietor of land against another. If such was the law, the right of the owner of land to improve, cultivate, change its character, or build upon the same could not be maintained, and the general rule applicable to the enjoyment and use of real property would be without effect. The law guarantees to the owner of land the free and unfettered control of it above, upon, and beneath the surface thereof. "*Cujus est solum ejus est usque ad cœlum,*" is the rule.

In protecting his soil, which the case shows was and had been for a long time a ploughed field and garden, from the flow of surface water, the defendant did not act inconsistent with a due and proper exercise of dominion over his own soil; and therefore, if the principle settled in *Bassett* v. *Salisbury Manf'g Co.*, cited in plaintiff's brief, be applicable at all, it supports the position taken by the defendant. It is quite clear, we think, that the defendant lost none of his rights in his soil, or his power to control absolutely its uses, by the occasional flow of surface water over it, and had a right to prevent said flow thereon as he might deem proper for his benefit; and if in so doing a larger amount of water flowed from the ditch on to the lands of the plaintiff, the damage, if any, resulting from said increase, would be "*damnum absque injuria.*"

*Wait,* for plaintiff.

This is not a case of water falling upon the defendant's land, to which he gave such direction that, instead of going elsewhere, it discharged itself over the land of the plaintiff; it was water which, at certain periods of the year, collected in a body before it reached the lands of the parties, and for forty years at least had run in a defined stream over the land of the defendant, except that, when there was an unusual amount of water, it to some extent overflowed the plaintiff's land. There is no more reason why the defendant should have the right to turn such a stream of water upon the plaintiff's land, than he should to turn upon it a constantly running river. The injury to the plaintiff would be the same in either case. The difference, if any, is only in degree and not in kind.

The allegation that the water had accumulated and flowed as described, from time immemorial, was sustained by the evidence; and the instructions requested for the plaintiff were in accordance with the law. A usage having been shown to have existed for forty years, or for over twenty years, the presumption therefrom arising cannot be rebutted by the other side showing an actual commencement at an earlier period. In other words, twenty years' use is, in this country, conclusive evidence of a prescription. *Wallace* v. *Fletcher*, 30 N. H. 434; 2 Green. Ev. 543. In this case no evidence was offered to rebut this presumption.

But if this is to be regarded as a case of surface water, in the ordinary acceptation of that term, it is fully within the principle and reasoning of the case of *Bassett* v. *Salisbury Manufacturing Company*, 43 N. H. 569.

BELLOWS, C. J. In respect to water not gathered into a stream, but circulating through the pores of the earth, beneath its surface, it is now settled that a land owner, who, in the reasonable use of his own land, obstructs or diverts the flow of such water, even to the injury of his neighbor's land, is not liable to respond in damages.

This is not upon the principle that has been in some cases adopted, that the land owner has the absolute and unqualified property in all such water as may be found in his soil, and may therefore do what he pleases with it, as with the sand and rock that form part of that soil, but upon the same general principle that governs the use of water flowing on the surface in well defined streams or channels; that is, to make a reasonable use of it for domestic, agricultural, and manufacturing purposes—not trenching, however, upon the similar right of others.

So in respect to water percolating through the soil, the land owner may ordinarily drain his land, may obstruct the usual course of the flow of such water by walls for cellars and other purposes, and may dig wells and use the water for domestic and agricultural purposes.

The test is, the reasonableness of the use or disposition of such water; and ordinarily that is a question of fact for the jury under the instructions of the court.

In favor of the unqualified and absolute right of the land owner to dispose of all such water as he finds in his soil, or that he may draw there by wells dug in his own land, it is urged, that he cannot know the condition of the water beneath the surface, the changes that take place, or the sources of supply of the springs and wells in the adjoining lands, or what portion is drawn from his own soil and what was originally found in his neighbor's, and therefore that there is no ground for presuming a mutual agreement between the land owners in ages past in respect to such underground water, or for holding a right to have been acquired by use or acquiescence. So is the leading case of *Acton* v. *Blundell*, 12 M. & W. 336.

In the first place, we do not understand that the right of the riparian owner to the use of streams of water running upon the surface is to be deduced from the presumed mutual agreement or acquiescence of

land owners, but rather as a natural right, incident to the land, to partake in the enjoyment of the common bounty of Providence, as in the cases of light and air. *Dickinson* v. *Canal Co.*, 7 Excheq. 299 ; *Shury* v. *Piggot*, 3 Bulst. 339 ; *Chasemore* v. *Richards*, 2 H. & N. 168 ; *Tyler* v. *Wilkinson*, 4 Mason 397.

And in the second place, although it may be true that in the majority of cases the condition of the water-flow beneath the surface is not accurately known, yet in a great many instances its general course,—from the slope of the surface, the appearance of springs, and other indications of water,—is quite obvious.

Indeed, this doctrine appears to embrace that large class of cases where the water flows in sight upon the surface in wet seasons of the year, but not to such an extent as to mark a regular channel with banks and sides, and also where the water moves slowly, but obviously, through boggy or swampy lands constituting the sources of streams and rivers.

The doctrine, in fact, would justify a land owner in intercepting and diverting the water, so working its way through spongy or swampy land, at any point before it was gathered into a regular channel, although it might be obvious that such water was the source of a stream which furnished valuable mill sites, even although such diversion was in no way necessary to the enjoyment of his land.

The contrary doctrine in respect to water percolating beneath the surface is established in this State in the well considered case of *Bassett* v. *Salisbury Manufacturing Company*, 43 N. H. 569 ;* and the question is, whether the doctrine of that case applies to water which appears on the surface in the season of melting snow and heavy rains, but is not gathered into any regular channel or water-course, or whether such water stands upon the footing of permanent streams

---

*This decision in *Dr. Bassett's* case was on exceptions taken at the *fifth* trial. The court below, at that trial, made the ruling reported *purely* upon the authority of *Acton* v. *Blundell* and the cases which have followed in its train, and contrary to the rule which had been applied at each of the previous trials. Few cases have ever undergone such protracted investigation and received such careful consideration by the full bench. At *least* four carefully prepared opinions were drawn up for consultation. The late Chief Justice BELL, who had given the subject much consideration, strenuously opposed the English rule as unreasonable, and inconsistent with well settled legal principles. The opinion *finally* drawn up by Judge BARTLETT was the unanimous judgment of the court. By reference to the note of Judge REDFIELD (Am. Law Reg., January, 1872, pp. 19, 24), it will be seen that that eminent jurist indorses the English doctrine, and assumes and seems to think that the cases of *Dr. Bassett* and *Dr. Swett*, reversing the English rule, are in harmony with it.

REPORTER.

running upon the surface in regular channels. If upon the latter footing, then the instructions were sufficiently favorable to the defendant.

Upon the examination of the cases which maintain the doctrine that the land owner may dispose of the water percolating beneath his soil as he pleases, they will be found to include the case of mere surface water not gathered into streams.

In *Rawstron* v. *Taylor*, 11 Excheq. 380, it is laid down by PARKE, Baron, in the opinion of the court, that in the case of common surface water rising out of springy or boggy ground and flowing in no definite channel, although contributing to the supply of the plaintiff's mill, the supply being merely casual and the water having no defined course, the defendant is entitled to get rid of it as he pleases.

The same doctrine is announced in *Broadbent* v. *Ramsbotham*, 11 Excheq. 602, which was an action for diverting water on defendant's land which naturally flowed over the surface of a hill into a brook which supplied plaintiff's mill. The court, per ALDERSON, Baron, says the right of the plaintiff cannot extend further than the right to the flow in the brook itself, and to the water flowing in some defined natural channel, either subterranean or on the surface, communicating directly with the brook itself. No doubt, he says, all the water falling from heaven and shed upon the surface of the hill, at the foot of which a brook runs, must, by the natural force of gravity, find its way to the bottom, and so into the brook; but this does not prevent the owner of the land on which this water falls from dealing with it as he may please, and appropriating it. He cannot, it is true, do so if the water has arrived at, and is flowing in, some natural channel already formed. But he has a perfect right to appropriate it before it arrives at such a channel.

It is quite clear that such surface water is put upon the same footing as water percolating beneath the surface; and the cases are quite numerous that show it, and we think it should be so upon principle.

The great objection to applying the doctrine, which forbids the diversion of running streams, to water circulating in the pores of the earth, is, that if applied without qualification it would, to a great extent, prevent the beneficial enjoyment and improvement of one's own land. A similar effect, though less extensive, would, be produced by applying that doctrine to mere surface water not gathered into any regular and defined channel. In many cases of springy and swampy lands the water moves from a higher to a lower level over a wide space, which, under such a doctrine, could not be drained or reclaimed. So in case of rain falling upon the side of a hill, and which would naturally find its way upon the surface into a brook at the bottom,—such a doctrine might effectually prevent the improvement of very extensive tracts of lands.

Again: the boundary line between what shall be deemed underground percolation and mere surface water would often be extremely difficult to define, and from that source serious embarrassments might arise. From the nature of the case, then, we think that the line is properly

drawn between water running in natural streams with well defined channels, and that which is merely spread over the surface and flows without any regular course or channel, or circulates under the surface through the pores of the earth.

The authorities are numerous to this point, besides those already cited. Among them are 3 Kent's Com. *439, note 2, and cases; *Ashley* v. *Wolcott*, 11 Cush. 192; *Luther* v. *Winnisimmet Co.*, 9 Cush. 171; *Wheatley* v. *Baugh*, 25 Penn. St. 528; *Buffum* v. *Harris*, 5 R. I. 243; —see, also, *Ellis* v. *Duncan*, 21 Barb. 230; Washburn on Easements 358, and cases cited.

These authorities, to be sure, hold generally that, in respect to mere surface and underground water not gathered into streams, the land owner where it is found has the unqualified right to dispose of it as he pleases, although in some cases the right appears to be limited to cases where it is dealt with in the improvement of such owner's land and without malice, as in *Wheatley* v. *Baugh*, 25 Penn. St. 532.

But these cases concur in putting all water not gathered into water-courses, whether upon the surface or underneath, on the same footing; and so far we think they are right. As, however, the case of *Bassett* v. *Salisbury Manufacturing Company* holds, in respect to water percolating through the soil, that the land owner's right to obstruct or divert it is limited to what is necessary in the reasonable use of his own land, we think the same rule must be applied to mere surface water not gathered into a stream.

To give the land owner the absolute and unqualified right of disposing of such water would, in many instances, be productive of great mischief to his neighbors, and lead to interminable struggles between them; for the same power to deal with such water would exist in each land owner when it was on his land.

In many instances the water would assume so much of the character of a natural water-course as to make the application of such a doctrine odious and unjust, while, at the same time, a total want of power to modify such flow to meet the necessities of the land owner would often stand in the way of valuable improvements which might be made without serious detriment to any one.

The doctrine which we maintain adapts itself to the ever varying circumstances of each particular case,—from that which makes a near approach to a natural water-course, down by imperceptible gradations to the case of mere percolation, giving to each land owner, while in the reasonable use and improvement of his land, the right to make reasonable modifications of the flow of such water in and upon his land.

In determining this question all the circumstances of the case would of course be considered; and among them the nature and importance of the improvements sought to be made, the extent of the interference with the water, and the amount of injury done to the other land owners as compared with the value of such improvements, and also whether such injury could or could not have been reasonably foreseen.

Ordinarily a land owner may dig a well upon his own land, even though, by percolation, it draws the water from his neighbor's land, or

even his well; but it would present a very different question if the well was dug by him with the express purpose of transferring the water in his neighbor's spring or well to his own, and knowing that this would be the result.

So, too, the owner of extensive swamp lands, which are the source of a river furnishing valuable mill sites, might reasonably be allowed to drain it by bringing the water into one channel, when it might be regarded as unreasonable to divert it entirely from its natural course.

So, also, excavations maliciously made in one's own land, with a view to destroy a spring or well in his neighbor's land, could not be regarded as reasonable; and there would be much ground for holding that if the spring or well in his neighbor's land could be preserved without material detriment to the land owner making such excavations, it would be evidence of malice, or such negligence as to be equivalent to malice. *Wheatley* v. *Baugh*, 25 Penn. St. 532.

In the case before us, the instructions asked for by the defendant assumed that he had the absolute and unqualified right to dispose of this water as he pleased, while the instructions given assumed that if the state of things proved had existed from time beyond memory, the defendant had no right at all to stop the flow of this water over his land, and thus cause it to flow over the plaintiff's land.

If this was mere surface water not gathered into a water-course, as we should infer it was from the case, the instructions upon the principles we have stated are erroneous, unless the plaintiff had acquired a right by prescription to have the water flow over the defendant's land. On that point, to constitute a title by prescription there must have been an adverse user under a claim of right for twenty years or more; but here there has been no such user: the defendant has merely permitted the surface water casually on his land to flow off over it. It does not appear that the plaintiff has claimed or exercised a right to discharge the water on his land upon the defendant's land, or that he has ever done any act or put himself in a situation by reason of which the defendant could maintain a suit against him, and thus interrupt a process of gaining title by prescription.

It is true that some water which had gathered on the plaintiff's land may have passed off in the same way over the defendant's land, but if it did, it was by no act of the plaintiff, nor under any claim of right by him. So the fact that this water had passed over defendant's land for more than twenty years does not change its character and make it a water-course.

In *Wood* v. *Waud*, 3 Excheq. 778, the court holds that the right to water-courses arising from enjoyment, is not the same in respect to *natural* and *artificial* water-courses,—holding that as to the latter the right must depend upon their character, whether of a permanent or temporary nature, and upon the circumstances under which they are created; and, by way of illustration, say that the flow of water from a drain, for the purpose of agricultural improvements, for twenty years, could not give a right to a neighbor so as to preclude the proprietor

from altering the level of his drains for the greater improvement of his land.

This precise case arose in *Greatrex* v. *Hayward*, 8 Excheq. 291, and was settled in accordance with this doctrine of *Wood* v. *Waud.* The same doctrine was applied in the case of drains for mining purposes, in *Arkwright* v. *Gell*, 5 M. & W. 203. In these cases, from the temporary nature of such drains and artificial water-courses, is deduced the inference that the use of the water discharged by them could not have been enjoyed as matter of right. See *Wood* v. *Waud*, 3 Excheq. 778.

In the subsequent case of *Rawstron* v. *Taylor*, 11 Excheq. 369, surface water on defendant's land, for more than twenty years, had flowed over land of the plaintiff into his water-course, and he had used it; but it was held that plaintiff could maintain no action against defendant for diverting it on his own land.

In respect to water percolating beneath the surface, the tendency of the authorities is against acquiring a right by prescription. The use of such water upon one's own land is apparently rightful, and is no such invasion of the rights of the adjoining owner as would enable him to maintain a suit, for it would be impossible to know that he was drawing water from his neighbor's land. Washb. on Easements, 384–390, and cases cited. In this respect, water that comes to the surface stands on a different footing, and yet in general they are governed by the same rules.

There may doubtless be cases where rights may be acquired by user in respect to such surface water, as in the case of eaves-drip; but it can be only when the use is adverse, and such as to give notice to the party against whom the right is acquired. In the case before us, however, no right of the defendant was invaded by any act of the plaintiff. He, the defendant, simply permitted the water gathered by the roadside to flow over his land, and so long as he did so he could maintain no action against any one; and we think the plaintiff had gained no right by prescription to have this water flow over the defendant's land, and there must be                                   *A new trial.*