### CANTWELL v. ZINSER et ux.

No. 9691

Court of Civil Appeals of Texas. Austin.

Feb. 4, 1948.

Rehearing Denied Feb. 25, 1948.

Shelton & Shelton, by Emmett Shelton, all of Austin, for appellant.

Powell, Wirtz, Rauhut & Gideon, by W. S. Gideon, all of Austin, for appellee.

HUGHES, Justice.

Spicewood Spring, the nature of the waters which supply it, the right to interfere with the flow of these waters before they reach the spring, and the use which may be made of them, is the subject matter of this suit.

Appellees, A. L. Zinser and wife, are the owners of the land upon which the spring is located. Jim Cantwell, appellant, is the owner of the adjacent land through which the waters that feed the spring come.

Although the case was tried to a jury, the court being of the opinion that no issues of fact were raised by the evidence, discharged the jury and rendered judgment for appellees, the principal basis of which was a finding (necessarily predicated upon undisputed evidence) by the court that the spring was "the natural outlet of underground waters flowing through the land of appellant in a well defined channel."

In our opinion, the evidence was not so conclusive upon this issue as to authorize the discharge of the jury.

Spicewood Spring has been known to exist for more than fifty years. In days gone by it was the principal source of fresh water for all who lived in that community.

Below this spring is Spicewood Draw, a well defined channel; this ravine empties into Shoal Creek, which runs into the Colorado River. Flood waters run this entire course but in normal times water from the spring disappears within a hundred feet or so from its mouth.

At one time appellant claimed this spring to be located upon his property, but in 1933, in litigation with former owners of appellee's lands, the spring was adjudicated to be a few feet inside appellee's line. Immediately after this judgment was rendered appellant obtained permission from the then owner of the spring to dig on his (appellant's) side of the line so as to cut off part of the water which flowed into the spring. This was done and appellant has used this water for drinking purposes ever since.

Appellee purchased the spring property in 1940. In 1942 he noticed that the spring was badly choked with vegetation and limestone deposits so that only a trickle of water ran down Spicewood Branch. He then began cleaning the spring, after which appellant commenced further excavations on his property and intercepted more of the spring water. With the aid of a pump and tank appellant has virtually cut off the flow of water in appellee's spring and has, in effect, moved the spring on to his land.

When appellant's pump is in operation, the flow of the spring is reduced from fifteen gallons per minute to one gallon per minute. He uses some of this water for domestic and irrigation purposes, but most of it is pumped into an earthen tank which leaks badly and the water is lost. It seems to be agreed that there is ample water for all necessary purposes for both parties.

On the issue as to whether the waters which feed this spring percolate or flow in a well defined channel, appellee testified:

"* * * the water evidently, by the geology I know, comes down through the rocks and is very likely all through these rocks."

"Q. These rocks on Jim's property are full of water according to your theory? A. Yes; no one knows about springs, where the direction is.

"Q. You don't contend there is one big stream of water up there? A. Anyone

that looks in there can see where the water has channeled its way.

"Q. There might be a hundred rivulets coming into that channel towards you? A. Yes. I just contend this is one natural outlet for this Spicewood Spring. It first flowed naturally by gravity for years.

"Q. You think that this water coming into Jim's sump is in an oozing condition? A. Very slow, yes.

"Q. Would you call it percolating? A. Yes, and oozing."

Mr. Doak Rainey, former State Highway Engineer of Texas, who qualified as an expert on underground waters, testified for appellant that the source of underground water is difficult to determine; that very likely the water which fed this spring fell on the hills back to the west and southwest and percolated down through the rocks, through seams in the rocks into possibly sand or gravel beds and trickle out at the first place that strata is intersected by a stream. He testified that in Texas our water usually comes from sand or gravel strata or from rain and that he did not know of any underground streams that flowed in well defined channels and that in his opinion the water which found its way into Spicewood Spring was local water, did not come from any great distance, and did not flow in a well defined channel. Mr. Rainey had inspected the excavation made by appellant, which he described as being five or six feet wide with water oozing out all along the bottom of the hole.

■ The above evidence was sufficient to support a jury finding that the waters intercepted by appellant were percolating waters and the trial court erred in withdrawing the case from the jury and in finding, as a matter of law, to the contrary.

In view of another trial, and in the event the court or jury should find the waters cut off by appellant to be percolating waters, the court will be governed by the law as expressed in Houston & T. C. Ry. Co. v. East, 98 Tex. 146, 81 S.W. 279, 66 L.R.A. 738, 107 Am.St.Rep. 620, and our amplification of that opinion.

■ In that case the court did not pass upon the right of a person to intercept and *waste* percolating water to the detriment of an adjoining owner because such facts were not before the court. Authorities are cited by the court, however, which hold that such right does not exist. We agree with such holdings.

Waste of natural resources is against the public policy of this State. Many conservation laws have been enacted by our legislature which evidence such policy. They apply to privately owned as well as publicly owned resources. These laws need not be cited as they are generally known. We do call attention to Articles 7600–7602, inc., Vernon's Ann.Civ.St., which make a nuisance the waste of water from artesian wells.

■ Appellant claims that he has some character of prescriptive rights to these waters which originated in 1933. His testimony shows that his use of the water at that time commenced with the consent of the owner of the spring. Such permissive use could not ripen into a prescriptive title except under circumstances not shown by this record.

The judgment is reversed and the cause remanded.

Reversed and remanded.