**LOWER NUECES RIVER WATER SUPPLY DIST. v. CITY OF PLEASANTON et al.**

No. 12426.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 10, 1952.

C. Burtt Potter, Ralph Wood, Fischer, Wood & Burney, Corpus Christi, for appellant.

Bobbitt, Brite & Bobbitt, San Antonio, Frank Steinle, Jourdanton, for appellees.

NORVELL, Justice.

This is an appeal from an order overruling the plea of privilege of Lower Nueces River Water Supply District asserting that venue of this cause should be transferred to Nueces County. Exception 14 of Article 1995, Vernon's Ann.Civ.Stats., is relied upon to sustain venue in Atascosa County where the suit was filed. This section reads as follows:

"14. Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

It is undisputed that the premises involved lie within Atascosa County. The remaining "venue fact" is the *nature* of the suit which is determined by the allega-

tions of the petition. Rado Refining and Producing Company v. Lucas, Tex.Civ. App., 93 S.W.2d 613; Cox v. Chapa, Tex. Civ.App., 188 S.W.2d 217; Tennessee Gas & Transmission Co. v. Heard, Tex.Civ. App., 190 S.W.2d 518; Ross v. Martin, Tex. Civ.App., 225 S.W.2d 220; Longhorn Trucks,. Inc., v. Bailes, Tex.Civ.App., 225 S.W.2d 642; Pickens v. Harrison, Tex.Civ. App., 231 S.W.2d 812.

Appellees (plaintiffs below) alleged that they were owners of lands situated in Atascosa County; that appellant had acquired several tracts of land also located within said county; that there was an artesian basin or underground reservoir of percolating waters, within the Carrizo sand which underlay the lands of the appellees and the appellant; that appellees had artesian wells upon their lands and appellant had drilled artesian wells upon its tracts and was taking therefrom enormous quantities of water —approximately ten million gallons per day —causing the same to flow into the Atas-cosa River and from thence to the Nueces River and then into a reservoir know as Lake Corpus Christi, "where the remaining and unwasted portion of said water (was) sold to the City of Corpus Christi and other purchasers and users located at a distance of approximately one hundred miles from the source of said water in the Carrizo Sands in Atascosa County, Texas"; that as a result of such actions the water supply within the artesian basin had been and was now being wasted and greatly diminished, appellees' wells destroyed and their lands greatly lessened in value. Appellees prayed for injunctive relief and damages.

Appellant's position is that the nature of the suit as disclosed by the petition is not such as is comprehended by Article 1995, § 14, but, on the contrary, the pleadings affirmatively show damage for which the law provides no remedy.[1] Primary reliance is placed upon Houston & Texas Central Railroad Co. v. East, 98 Tex. 146, 81 S.W. 279, 66 L.R.A. 738, 107 Am.St.Rep. 620,[2] and

---

1. In the report of Acton v. Blundell, 12 Meeson & Welsby 324, 152 English Reprint 1223, examples of damages to lands for which the law provides no relief under the rule of damnum absque injuria are set forth. In argument, counsel stated, "The maxim, sic utere tuo ut alienum non laedas, does not go to forbid damna generally, but damna injuriosa. To constitute a violation of that maxim, there must be injuria as well as damnum. There are many cases in which a man may lawfully use his own property so as to cause damage to his neighbour, so as it be not injuriosum. He may build a wall on his own ground so as to obstruct the lights of his neighbour, who may not have acquired a right to them by grant or adverse user. He may build a mill near the mill of his neighbour to the grievous damage of the latter by loss of custom, and so in other cases."

2. Two general rules of property rights in and to percolating waters (each with varying limitations and exceptions) are recognized by the authorities; the common law or English rule and the doctrine of correlative rights or American rule. The common-law rule of absolute ownership stems from Acton v. Blundell, 12 Meeson & Welsby 324, 152 English Reprint 1223, but the soundness of the rule has been challenged in some jurisdictions. 56 Am.Jur. 595, Waters, §§ 113, 114.

The Texas cases of Houston & Texas Central R. Co. v. East, 98 Tex. 146, 81 S.W. 279, 66 L.R.A. 738, 107 Am.St.Rep., 620, 4 Ann.Cas. 827; Texas Company v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397, and Farb v. Theis, Tex. Civ.App., 250 S.W. 290, are generally cited by law book writers as supporting the English or common-law rule. 67 C.J. 838; 56 Am.Jur. 596; 44 Tex.Jur. 161; 55 A.L.R. 1391.

It is interesting to note that in Acton v. Blundell, when Mr. Justice Maule suggested that the civil law authorities supported the theory of absolute ownership, counsel questioned the information and knowledge of the Romans saying, "That the Romans knew little about cutting off or using underground currents of water appears from their use of aqueducts." Seemingly, however, in some jurisdictions the notion of increased knowledge of the movement of underground waters has in part formed the basis for a departure from the rule of the English common law. Katz v. Walkinshaw, 141 Cal. 116, 70 P. 663, 74 P. 766, 64 L.R.A. 236, 99 Am.St.Rep. 35. Some cases recognize a special exception relating to waters of an artesian basin underlying the lands of several owners. See cases cited in 67 C.J. 836, Waters, § 252.

Texas Company v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397.

In the East case, the Supreme Court said [98 Tex. 146, 81 S.W. 280]:

"Since the decision in the case of Acton v. Blundell, 12 Mees. & W. 324, the law.as therein laid down, so far as it controls this case, has been recognized and followed in the courts of England, and probably by all the courts of last resort in this country before which the question has come, except the Supreme Court of New Hampshire. Bassett v. Salisbury Mfg. Co., 43 N.H. 569; Swett v. Cutts, 50 N.H. 439. That doctrine is thus stated: 'That the person who owns the surface may dig therein and apply all that is there found to his own purposes, at his free will and pleasure; and that if, in the exercise of such right, he intercepts or drains off the water collected from the underground springs in his neighbor's well, this inconvenience to his neighbor falls within the description of damnum absque injuria, which cannot become the ground of an action.' The arguments in favor of the application to such cases of the doctrines applicable to defined streams of water were thoroughly presented at the bar in Acton v. Blundell, and the reasons for the conclusion of the court against such application were carefully stated in the opinion. In all that has been said in subsequent discussions, little, if anything, has been added to the arguments of counsel and of the court in that case. Acton v. Blundell, supra; Chasemore v. Richards, 7 H.L.Cas., 364; Frazier v. Brown, 12 Ohio St. 294; Miller v. Black Rock Springs Imp. Co., 99 Va. 747, 40 S.E. 27.

"The many other authorities on the subject are cited in the cases referred to, and so thorough has been the discussion that we feel that it would be useless to attempt any addition. The practical reasons upon which the courts base their conclusions fully meet the more theoretical view of the New Hampshire court, and satisfy us of the necessity of the doctrine. Those rea-sons are thus summarized by the Supreme Court of Ohio in Frazier v. Brown: 'In the absence of express contract and a positive authorized legislation, as between proprietors of adjoining land, the law recognizes no correlative rights in respect to underground waters percolating, oozing, or filtrating through the earth; and this mainly from considerations of public policy: (1) Because the existence, origin, movement, and course of such waters, and the causes which govern and direct their movements, are so secret, occult, and concealed that an attempt to administer any set of legal rules in respect to them would be involved in hopeless uncertainty, and would, therefore, be practically impossible. (2) Because any such recognition of correlative rights would interfere, to the material detriment of the commonwealth, with drainage and agriculture, mining, the construction of highways and railroads, with sanitary regulations, building, and the general progress of improvement in works of embellishment and utility.' "

In Texas Company v. Burkett, supra, the Supreme Court held that percolating waters could be captured by a landowner and then sold for use off the premises.

However, it does not seem that the doctrine of Houston & Texas Central R. Co. v. East has been extended to include cases involving gross waste of percolating waters. Mr. Justice Williams, speaking for the Supreme Court, was careful to distinguish the case before him from that of Stillwater Water Co. v. Farmer, 89 Minn. 58, 93 N.W. 907, 60 L.R.A. 875, 99 Am.St. Rep. 541. In the East case it was pointed out that the defendant was "making a reasonable and legitimate use of the water which it takes from its own land * * *," while in the Minnesota case, "the defendant made no use whatever of the water, but, for no useful purpose, drained it away, and discharged it through the sewers of a town, thus taking it from plaintiff, who was supplying it to the inhabitants of the town for drinking purposes. The court recognized the soundness of the doctrine which we

have stated, but held that, as the defendant was making no legitimate use of the water, he was properly enjoined from thus wasting it. Whether or not the courts in these cases succeeded in establishing just distinctions between them and others applying the general rule, we are not called on to determine." [3]

The Austin Court of Civil Appeals has held that one wasting water is not protected under the doctrine of absolute ownership of percolating water set forth in Houston & Texas Central R. Co. v. East. In Cantwell v. Zinser, 208 S.W.2d 577, 579, it was said:

"In (the East) case the court did not pass upon the right of a person to intercept and *waste* percolating water to the detriment of an adjoining owner because such facts were not before the court. Authorities are cited by the court, however, which hold that such right does not exist. We agree with such holdings.

"Waste of natural resources is against the public policy of this State. Many conservation laws have been enacted by our legislature which evidence such policy. They apply to privately owned as well as publicly owned resources. These laws need not be cited as they are generally known. We do call attention to Articles 7600–7602, inc., Vernon's Ann.Civ.St., which make a nuisance the waste of water from artesian wells."

3. The rule stated by the Minnesota Court in Stillwater Water Co. v. Farmer, supra [89 Minn. 58, 93 N.W. 910], is as follows:
"We therefore formulate and announce the rule governing the facts here to be that, except for the benefit and improvement of his own premises, or for his own beneficial use, the owner of land has no right to drain, collect, or divert percolating waters thereon, when such acts will destroy or materially injure the spring of another person, the waters of which spring are used by the general public for domestic purposes. He must not drain, collect, or divert such waters for the sole purpose of wasting them. Briefly stated, a landowner must not

With special reference to waste, the petition in the present case, among other things, alleges that:

"Plaintiffs would show to the Court that the water withdrawn from the Carrizo Sand on said above described premises through wells drilled by Defendant on said premises is not used on said premises, and approximately fifty per cent or more of said water extracted is wasted by the actions of the Defendant in permitting or causing said extracted water to flow into the Atascosa River at a point near Campbellton in Atascosa County, Texas, and then down the course of the Atascosa River through Atascosa County and other adjoining counties and into the Nueces River for a distance of approximately seventy-five miles until said water reaches a reservoir lake known as Lake Corpus Christi, near the town of Mathis, Texas, from which reservoir it is thereafter withdrawn and conducted by Defendant down the Nueces River to points at and about the City of Corpus Christi, where the remaining and unwasted portion of said water is sold to the City of Corpus Christi and other purchasers and users located at a distance of approximately one hundred miles from the source of said water in the Carrizo Sands in Atascosa County, Texas.

"During and throughout the interval between the withdrawal of such water

collect and wantonly waste percolating waters which would otherwise be, or have theretofore been, appropriated by his neighbor for the general welfare of the people. If he does, an action to restrain and prohibit such waste may be maintained by the party injured."
In 56 Am.Jur. 602, it is pointed out that in some jurisdictions following the rule of absolute ownership of percolating waters, one wasting water may be held liable therefor when other landowners having an equal right to such waters are injured. The case of Stillwater Water Co. v. Farmer is cited as supporting this limitation upon or exception to the rule.

by Defendant from said above described premises in Atascosa County, Texas, and the sale of said water by Defendant in and around Corpus Christi, Texas, and during the time such water is being conducted by Defendant from its wells located in Atascosa County, Texas, to the Atascosa River, and while such water is flowing through the water courses of the Atascosa River and the Nueces River, millions of gallons of such water is lost and wasted by reason of evaporation, seepage, and other causes and is not put to any beneficial use, * * *.

"The water thus caused by Defendant to be lost, dissipated, and wasted in the process of conducting artesian well water away from the above described premises for sale elsewhere, being a part of the reservoir of fresh water known as the Carrizo Sand water formation, is extracted by Defendant from the common reservoir of artesian water underlying the lands of all the Plaintiffs, who are dependent for their domestic water supply and their economic existence upon such artesian reservoir, including the water therein being lost and wasted by Defendant. The amount of water thus being extracted by Defendant is grossly excessive, both with regard to the fractional portion thereof which is eventually saved and sold by Defendant, and with regard to the purpose and manner in which such water could be lawfully used upon the premises of Defendant."

█ █ The office of the plea of privilege is not to test the allegations of the petition in the manner of a special exemption. We are here concerned with the *nature* of the suit as shown by the petition. While it is not charged that *all* of the water taken from appellant's wells is being wasted and put to no beneficial use, it is, nevertheless, asserted that appellant is not making a reasonably efficient use of the waters which it is extracting from a common artesian basin. Waste is charged with resulting damage to appellees. Under the holding of

Cantwell v. Zinser, supra, the nature of the suit as made by the petition is one comprehended by the provisions of Article 1995, § 14, and the order overruling the plea of privilege is accordingly affirmed.