W. C. SANDERS et ux., Appellants,

v.

STATE DEPARTMENT OF PUBLIC WELFARE et al., Appellees.

No. 628.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 7, 1971.

Rehearing Denied Oct. 28, 1971.

Wood, Burney, Nesbitt & Ryan, Allen Wood, Corpus Christi, for appellants.

Office of the Attorney General of Texas, Melvin Corley, Asst. Atty. Gen., Austin, for appellees.

## OPINION

NYE, Chief Justice.

W. C. Sanders and wife brought suit against the State Department of Public Welfare and Humberto Taddei seeking a declaratory judgment invalidating a regulation of the State Department of Public Welfare. The Welfare Department filed its plea of privilege to be sued in Travis County. The trial court granted the plea and transferred the suit as prayed by the State. The appellants appeal contending primarily that the regulation sought to be construed was unconstitutional; there was no basis for transferring the case from Nueces County because the acts of the resident defendant were illegal.

The plaintiffs alleged that prior to March 1970 they had been receiving old age assistance for a number of years. That shortly after that date, defendant Taddei, an officer of the Texas Department of Public Welfare designated to hear appeals of the defendant agency, ruled that the plaintiffs were ineligible for further aid. His ruling, based on a Department's regulation, was to the effect that since the plaintiffs had reduced their net worth to within certain prescribed limits set by the Department by paying money to their son, they became ineligible for further subsistence. The plaintiffs contend that the subject regulation is unconstitutional in that it violates the due process and equal protection provisions of the State and Federal Constitutions. They allege that they were deprived of their right to receive old age assistance because of the arbitrary interpretation placed on such regulation by defendant Taddei which therefore violated plaintiffs' civil and property rights.

The evidence showed that the plaintiffs were over eighty years of age. They both had heart conditions, Mrs. Sanders having worn a pacemaker for five years. They lived in San Patricio County for almost all of the last fifty-five years. In March 1970 the Sanders were sent a questionnaire by the defendant agency in which they answered that they had $5,000.00 on deposit in their bank. A welfare worker from Arkansas Pass came by to see them. The worker told the plaintiffs that they were only allowed to have $3,000.00. Mr. Sanders told the welfare worker that he owed the bank, a drug store, and his son some of the money. The welfare worker told the plaintiffs it would be all right to use the money to pay debts and that they should go ahead and make an amended statement of what they had and what their net worth was. Sanders testified that he paid his son $1800.00, and the bank and the drug store approximately $200.00. This was verified by Sanders' letter to the Department and by his subsequent affidavit that stated that his net worth was less than $3,000.00. It was undisputed that Sanders had owed his son money far in excess of $1800.00. The son had furnished total support to the plaintiffs for some four years and partial support to them for an additional four years after that. This occurred in the latter part of the 1930's and early part of the 1940's after Sanders had suffered business reversals. At the time that the Depart-

ment had made the inquiry, Mr. and Mrs. Sanders were receiving social security payments in the amount of $150.50 per month, less $10.60 for medicare, and $57.00 per month old age assistance from the Welfare Department. They stated that without financial aid from the Welfare Department they would not have enough to live on.

Defendant Taddei testified that he was a resident of Nueces County. He worked for the State Department of Public Welfare. His duties were to hear appeals and to see whether or not the Department had made the correct decision in denying an applicant subsistence, or lowering an applicant's claim for welfare subsistence. The regulation in question stated that:

"Mere verbal allegations of an old, informal debt to relatives, however, cannot be considered as justifying a transfer to such relatives."

This regulation, according to Taddei, was from his Financial Service Handbook under Section 2141. It dealt with the regulation concerning the transfer of property. He testified that his ruling denying the Sanders' claim was based on this particular regulation and that his ruling concerning the Sanders was the final administrative act affecting them. He told the plaintiffs that their only recourse from his ruling was through the courts. The Texas Department of Public Welfare contends that this regulation must be tested in Travis County where the State of Texas maintains its residence.

It is plaintiffs' contention that where a State official or employee (i. e. Taddei) acting illegally under a void and unconstitutional regulation does in fact deprive a citizen of his rights, such employee can be sued as an individual. It follows, they say, that such employee can be sued in the county where he resides. The appellees maintain that the only issue to be considered by this Court on the plea of privilege is (1) whether or not the Sanders have stated a cause of action against defendant Taddei as an individual, sufficient to maintain venue in Nueces County, or (2) whether the Sanders' action is actually one against the State of Texas which should cause venue to lie in Travis County.

If Sanders' suit is based as it is upon allegations that the regulation in question is unconstitutional and void and that in exercising powers under the regulations, Taddei or members of the State Department of Public Welfare, were acting beyond their legal authority, plaintiffs' suit would not be an action against the State of Texas. Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915 (1925). If a statute is unconstitutional, the Court of Civil Appeals has authority to consider such fundamental error apparent upon the face of the record, whether it has been assigned as error or not. Where a statute necessarily invades the rights of a party by virtue of the provisions of a void statute, such a statute must be considered as never having been enacted and a decision that is based thereon as being void. Under such circumstances the question is one of fundamental error of which the appellate court must take cognizance, Houston Lighting & Power Co. v. Jenkins, 5 S.W.2d 1030 (Tex.Civ.App.—Austin 1928); Stubblefield v. State, 425 S.W.2d 699 (Tex.Civ.App.— Tyler 1968, n. r. e.).

The general rules that govern the construction of statutes have been applied with equal force to the construction of old age assistance regulations. 81 C.J.S. Social Security and Public Welfare, § 15 and § 22, pp. 40–50. The Supreme Court of the United States recently discussed the rights of poor people to welfare entitlements under certain state regulations. The Court said, in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970):

"* * * Such benefits are a matter of statutory entitlement for persons qualified to receive them.[8] * * *

8. It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.' Much of the existing wealth in this country takes the form of rights that do not

fall within traditional common-law concepts of property. It has been aptly noted that

'(s)ociety today is built around entitlement. The automobile dealer has his franchise, the doctor and lawyer their professional licenses, the worker his union membership, contract, and pension rights, the executive his contract and stock options; all are devices to aid security and independence. Many of the most important of these entitlements now flow from government: subsidies to farmers and business men, routes for airlines and channels for television stations; long term contracts for defense, space, and education; social security pensions for individuals. Such sources of security, whether private or public, are no longer regarded as luxuries or gratuities; to the recipients they are essentials, fully deserved, and in no sense a form of charity. It is only the poor whose entitlements, although recognized by public policy, have not been effectively enforced.'

Reich, Individual Rights and Social Welfare: The Emerging Legal Issues, 74 Yale L.J. 1245, 1255 (1965). See also Reich, The New Property, 73 Yale L.J. 733 (1964)."

The plaintiffs contend in their suit that defendant Taddei by his arbitrary ruling, has deprived these plaintiffs of an important property right. Plaintiff testified that they were entitled to the $57.00 payable by the State and were eligible to receive the same except for the arbitrary interpretation made by defendant Taddei of the subject regulation. They argue that the regulation lacks specific and definite terms for clarity so that it is, as a matter of law, unconstitutional and therefore utterly void.

█ It is a general principle of law that a statute or regulation must be definite to be valid. Due process of law in legislation requires definiteness or certainty. If a regulation is incomplete, vague, indefinite and uncertain and it forbids the doing of an act which is so vague, that men of common intelligence must necessarily guess at its meaning and that such men differ as to application, it violates the first essential of due process of law. Lone Star Gas Co. v. Kelly, 140 Tex. 15, 165 S.W.2d 446 (Tex.

Comm'n App. 1942); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); 16A C.J.S. Constitutional Law § 569(5), p. 584; 16 Am. Jur.2d 551–552.

The Sanders ask this Court, how can men of common intelligence agree as to what is meant by the term "old" as it is used in the regulation? They say: "So what guideline is to be used in determining what is meant by an old man, old shoes, old times, or an old debt? To a ten-year old, a man of thirty may be old. But to a man of fifty, a man of thirty may seem young. To a rich man who buys a new pair of shoes often, a pair of shoes six months old may be old, whereas to a lawyer who buys a new pair once every four or five years a pair of shoes six months old may be new. The term 'old' then is a relative term depending upon the individual point of view of the person making the judgment."

█ It is clear to us that the term "old" is vague, uncertain and indefinite. It is probable that one officer of the State Welfare Department might believe that a one-year old debt was an old one. Another in the same position might use five years, still another, ten. The defendant Taddei stated that the word "old" in the regulation to him would mean a debt that existed for five years or longer.

Taddei was questioned as to his interpretation of the term "informal debt". He stated that an informal debt was one that could not be substantiated by documentary evidence. He stated that it would preclude any oral obligation from being considered. This being the case it would be difficult for men of common intellect to know what sort of debt the State Department of Public Welfare or any of its agents might designate as an informal debt. The plaintiffs state that the fact that the obligation was an oral promise and was made by parol, does not justify the description given by defendant Taddei that it was "informal".

Quoting again from the Sanders' brief it says that: "Some things given and evidenced by parol are of the highest, even exalted, character. One may think here of the words spoken at a ceremony of marriage or confession of faith. Oral, yes, but hardly to be characterized by the expression 'informal'. And, in more mundane affairs, the fact that an obligation may be by parol does not necessarily take anything away from its force or effect. A high compliment is to say of anyone that his word is his bond. Informality is a term that really means nothing in the context in which it is used in the regulation."

We believe that the expression "old" and "informal" are simply so vague, indefinite and uncertain that men of common intelligence must necessarily guess at their meaning. The terms call for speculation. They do not supply a guideline that could ultimately be tested by a court to determine the intent of such a regulation.

Finally, the regulation restricts a certain class of people designated "relatives". Again there is no guideline on the interpretation of "who is a relative", whether it be near or distant. The term "relative" could embrace a spouse or a remote kinsmen by consanguinity or affinity. If the intent of the regulations was to prevent fraud, we fail to see that the payment of a debt to a relative, as a matter of law, would be malum in se. A cooperative ally in the form of a close friend or neighbor is not prohibited by the regulation. We fail to see the importance of a limitation to "relative" without other governing factors.

There is no way that this Court, or any court could follow the established canons of construction and come logically and consistently to the ultimate intent of this regulation. No degree of accuracy can be manifested by this regulation, when interpreted by two or more employees of the agency, or by two or more courts, as far as that is concerned.

The acts of State officials which are not lawfully authorized, are not the acts of the State of Texas. The Supreme Court of Texas in Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, held that an action against the officials by one whose rights have been invaded or violated by such acts, for determination and protection of his rights, was not a suit against the State within the rule of immunity of the State from suit. State v. Epperson, 121 Tex. 80, 42 S.W.2d 228 (Tex.Comm'n App. 1931). See also State v. Lain, 162 Tex. 549, 349 S.W.2d 579 (1961); Griffin v. Hawn, 161 Tex. 422, 341 S.W.2d 151 (1960); Calvert v. Harris County Water Control & Imp. Dist., 368 S.W.2d 833 (Tex.Civ.App.—Austin 1963, wr. ref. n. r. e.). Recently Judge Werlein of the Houston Court of Civil Appeals, said:

"The Department of Public Safety and its director are charged with the administration and enforcement of the Texas Motor Carrier Act. If they were properly exercising their duties and functions in behalf of the State in the administration and enforcement of the Act, and acting within the scope of authority lawfully conferred upon them, they had the right in the defense of the case to rely upon sovereign immunity since the suit was brought without the State's consent. On the other hand, if they acted illegally, wrongfully or in a manner not authorized by law with respect to appellant and his legal rights, they would not be entitled to protection under the doctrine of sovereign immunity since the suit would not be one against the State. Cobb v. Harrington, Tex.Sup.1945, 190 S.W.2d 709; Forbes v. Texas Department of Public Safety, Tex.Civ.App., 335 S.W.2d 439; Texas Highway Com'n v. Texas Ass'n of Steel Imp., Inc., Tex. Sup.1963, 372 S.W.2d 525." Allen v. State, 410 S.W.2d 52 (Tex.Civ.App.— Houston 1966, n. w. h.).

■ In a citizen's suit for declaratory judgment invalidating a minute order of the highway commission and for injunctive relief the late Justice Norvell wrote:

"Once the view be adopted as it must under the record before us, that the Minute Order is void because it is contrary to the competitive bidding statute, there can be no basis for saying that the disputed order was authorized by law. It was wholly nugatory and hence the present proceeding cannot be classed as a suit against the state. * * *" Citing cases. Texas Highway Commission v. Texas Association of Steel Importers, Inc., 372 S.W.2d 525 (Tex.Sup.1963).

In a venue appeal, the office of a plea of privilege is not to test the allegations of the petition as if it were a special exception, but the concern is with the nature of the suit as shown by the petition. Lower Nueces River Water Supply District v. City of Pleasanton, 251 S.W.2d 777 (Tex. Civ.App.—San Antonio 1952). It follows that the nature of the Sanders' suit against defendant Taddei, was that he was acting without lawful authority, and that he was the person that severed the Sanders from their right to receive subsistence in the form of welfare payments.

■ The State of Texas argues that Taddei is named as defendant only in his official capacity and that no cause of action is stated against him. The plaintiffs' pleadings allege that Taddei has deprived the plaintiffs of an important right; that he acted under an unconstitutional and void regulation; therefore, the action is against him as an individual and not in his capacity as a State official. We find no fault with the parties defendant. Robbins v. Limestone County (Tex.Sup.), supra. It was said in Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), that:

" * * * where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief. It is important to note that in such cases the relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient. * * *"

We hold that Taddei was acting in excess of the authority conferred upon him by law. Therefore, his action is not that of the State of Texas. State v. Epperson, supra; Allen v. State, supra; Texas Highway Commission v. Texas Association of Steel Importers, Inc., supra.

The State argues that the plaintiffs do not seek relief against Taddei but that their only ultimate relief is against the State of Texas. As we construe the plaintiffs' petition and the argument in their brief we see that they are seeking the same relief against Taddei as they are seeking against the State Department of Public Welfare. Since their suit is in the nature of a declaratory judgment which seeks to declare the rights and relationship that are involved in the enforcement of a void regulation, as it affects the plaintiffs, they are entitled to a declaration of their status within the meaning of the law.

"Where a state officer confronted with an uncertain meaning of a law requiring acts on his part or whether the law is valid, proposes to pursue a course of conduct injuriously affecting persons contending that he has no legal right thus to act, a 'controversy' arises under the declaratory judgment act justifying a

declaration of the status of the law to settle a controversy between individuals, notwithstanding that some may be state officers." Anderson's "Actions for Declaratory Judgments," Vol. 1, page 353.

The evidence in the record shows that had the plaintiffs traded in their 1950 model automobile and paid the $1800.00 on a 1968 model car, the eligibility according to defendant Taddei for old age assistance would not have been affected. But the payment of an honest debt to their son cannot be countenanced. The regulation as it now stands does not accord due process of law to these plaintiffs. The guidelines are not definite or certain to permit due process of law. The importance of the principle here involved, is great. It was so aptly stated by the Commission of Appeals in International & G. N. Ry. Co. v. Mallard, 277 S.W. 1051 at 1053, in an opinion adopted by the Supreme Court of Texas, where the Court said:

"* * * The inexorable command is that a statute, as it is with a judgment, must accord due process of law. Nothing is paramount to that requirement. The security of property, life, and liberty depend upon its observance. Paul, on occasion, was allowed due process, and lived; because of its subsequent denial, he died. The death of One much higher, and wholly guiltless, was accomplished through its nonobservance. The security of property and liberty, no less than life itself, depends upon faithful observance of its behest. Infidelity here invites certain destruction. Hence, the duty to declare the statute void is plain, although the occasion of its performance is most regrettable."

Judgment of the trial court is reversed and the cause remanded for trial in accordance with the opinion of this Court.

SHARPE, J., not sitting.